464 F.2d 339
 Fed. Sec. L. Rep. P 93,552
MOUNT CLEMENS INDUSTRIES, INC., a corporation, Mt. Clemens
Corporation (formerly Buckeye Corporation), a
corporation, Petitioner-Appellants,
v.
O. M. BELL et al., Respondents-Appellees.
 No. 71-1318.
 United States Court of Appeals,
 Ninth Circuit.
 June 28, 1972.
 
 Lawrence Teplin (argued), of Leslie, Rubin & Teplin, Beverly Hills, Cal., for petitioners-appellants.
 Thomas B. Moss (argued), of Voegelin & Barton, Los Angeles, Cal., for respondents-appellees.
 Before CHAMBERS, KOELSCH and ELY, Circuit Judges.
 ELY, Circuit Judge:
 
 
 1
 This appeal presents, for the first time in our court, the issue of whether there is a requirement in a private action for damages under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b),[1] and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. Sec. 240.10b-5,[2] that the plaintiff be a purchaser or seller of the securities with respect to which he claims that actionable fraud has occurred.
 
 
 2
 *****
 
 
 3
 * * *
 
 
 4
 The appellants, Mount Clemens Industries [MCI] and Mount Clemens Corporation, sought recovery of money damages in the District Court, claiming that they were precluded from bidding on and purchasing securities (one hundred percent of the outstanding shares of Missile Dynamics Corporation) at a sheriff's sale because of the misrepresentation to them by Bell that the securities were worthless. Bell, a former officer and director of MCI, was the President of Missile both when the alleged misrepresentation was made and at the time of the sheriff's auction sale. Other claims made by the appellants were grounded upon alleged violations of state law.
 
 
 5
 The District Court dismissed the action, insofar as it pertained to alleged violations of the federal securities laws in the auction sale transaction, because appellants were neither purchasers nor sellers of the Missile stock. Jurisdiction of the state law claims was retained, pursuant to 28 U.S.C. Sec. 1332 and the diverse residence of the parties.
 
 
 6
 This interlocutory appeal is from the dismissal of the federal claim. Leave to take the appeal was granted pursuant to the District Court's certification under 28 U.S.C. Sec. 1292(b).
 
 I. THE PURCHASER-SELLER LIMITATION
 
 7
 The District Court's recognition of the "purchaser-seller" limitation is here attacked with a two-edged sword. The thrust of the appellants' argument is that the "purchaser-seller" requirement, first espoused in Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), and recently reaffirmed in Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970), has been so eroded by other decisions of the Second Circuit[3] that it no longer truly represents the correct law, even in that Circuit.
 
 
 8
 Another line of attack is advanced by the Securities and Exchange Commission (SEC), in its brief as amicus curiae. Taking the position that Birnbaum was incorrectly decided in the first instance, the Commission contends that the District Court's application of the "purchaser-seller" doctrine to our present case "was an unduly narrow construction of Rule 10b-5, and that this Court should refuse to follow the Birnbaum and Iroquois cases."
 
 
 9
 In essence, we are urged to adopt a literal interpretation of the Act and the Rule so that "any person" who alleges that he was injured by reason of a "manipulative or deceptive device or contrivance," occurring "in connection with the purchase or sale of any security," has standing to maintain an action for damages under Section 10(b) and Rule 10b-5.
 
 
 10
 Upon careful examination, the edges of the sword appear quite dull, and we therefore reject both of the specified arguments. In our view, there has been no erosion of Birnbaum. Rather, the doctrine formulated therein has been interpreted and applied "flexibly, not technically and restrictively," Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971), thus promoting the Congressional purpose in the enactment of this remedial legislation. See Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 798 & n.14 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). Moreover, while neither Section 10(b) nor Rule 10b-5 expressly requires engrafting a "purchaser-seller" limitation upon suits brought thereunder, there are substantial and compelling reasons why standing to sue for money damages under these provisions should be so limited.
 
 
 11
 Since securities transactions are conducted on a nationwide scale, often without regard for geographical boundaries,[4] we attach significant importance to the fact that every other Court of Appeals that has considered this issue has adopted the "purchaser-seller" requirement.[5] Yet the desirability of national consistency in the interpretation of the federal securities laws is not the principal motivating force behind our adoption of the Birnbaum principle. Rather, it is the compelling logic of the opinions in Iroquois Industries, Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970), and Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970), that impels us to the same conclusion as that reached by our Brothers in the other Circuits.
 
 
 12
 In Iroquois, the Second Circuit reexamined its holding in Birnbaum and reaffirmed, on three grounds, the continuing vitality of the purchaser-seller limitation. First, the court directed its attention to one basis for the Birnbaum decision-the expressed purpose of the SEC in enacting Rule 10b-5-and concluded that the Birnbaum court was correct in assessing that purpose as affording to sellers the same remedies as were then available only to defrauded purchasers of securities.[6] Next, the Iroquoiscourt undertook to illustrate that decisions subsequent to Birnbaum had not relaxed the purchaser-seller rule, but had all adhered to the doctrine.[7] The final basis for retaining the limitation on standing was the court's recognition of the unquestionably sound principle espoused in Blau v. Lehman, 368 U.S. 403, 413, 82 S.Ct. 451, 457, 7 L.Ed.2d 403 (1962):
 
 
 13
 "Congress can and might amend [the Act] if the Commission would present to it the policy arguments it has presented to us, but we think that Congress is the proper agency to change an interpretation of the Act unbroken since its passage, if the change is to be made."
 
 
 14
 Although this language was directed to Section 16(b) of the Exchange Act, 15 U.S.C. Sec. 78p(b), we agree with our colleagues of the Second Circuit that it applies with equal force to Section 10(b).
 
 
 15
 Subsequent to Iroquois, the highly persuasive opinion of the Fifth Circuit in Herpich v. Wallace was issued. Judge Ainsworth's thorough examination of the issue of standing under Section 10(b) and Rule 10b-5 "within the framework of Article III of the United States Constitution, which restricts federal judicial power to 'cases' and 'controversies'," 430 F.2d at 805, resulted in the holding "that for a plaintiff to establish his standing to maintain a Rule 10b-5 action for damages, he must be a purchaser or seller of the securities involved in connection with the alleged rule violation." 430 F.2d at 806. The rationale of Herpich therefore adds another dimension to the Birnbaum doctrine-the purchaser-seller limitation is not only deemed a desirable manner for effectuating the Congressional and administrative purposes to be furthered by the anti-fraud provisions, but it also becomes required as a matter of constitutional necessity.
 
 
 16
 Neither the appellants nor the Commission offer sufficient rebuttal to the carefully reasoned opinions discussed above. In fact, the only judicial support relied upon by appellants is found in isolated, conclusory statements phrased in the statutory language. Typical examples are the following quotations from the most recent Supreme Court opinion dealing with Section 10(b) and Rule 10b-5:
 
 
 17
 "Section 10(b) outlaws the use 'in connection with the purchase or sale' of any security of 'any manipulative or deceptive device or contrivance.'
 
 
 18
 ******
 
 
 19
 * * *
 
 
 20
 ". . . . Since there was a 'sale' of a security and since fraud was used 'in connection with' it, there is redress under Sec. 10(b), whatever might be available as a remedy under state law."
 
 
 21
 Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 10, 12, 92 S.Ct. 165, 168, 30 L.Ed.2d 128 (1971). These statements, standing alone, might seem to support a literalistic approach to the statute. Yet when they are read in context, it becomes apparent that the Supreme Court's opinion lends more credence to our view than to that of the appellants. Throughout the Bankers Life opinion, Mr. Justice Douglas repeatedly emphasized that Manhattan, the claimant there, was to be afforded standing under the Act because of its status as a defrauded "seller" of securities.[8] Of more significance is the fact that the Court explicitly declined to rule on the purchaser-seller question. See id. at 13 n. 10, 92 S.Ct. at 165 n. 10. This express reservation, taken in conjunction with the principle set forth in the above quotation from Blau v. Lehman, supra, provides very solid additional support for our adoption of the Birnbaum doctrine.
 
 
 22
 Having decided that the District Court correctly concluded that the purchaser-seller limitation applies in our Circuit, we now examine that court's determination that the appellants did not fall within the protected class.
 
 II. PLAINTIFFS AS PURCHASERS OR SELLERS
 
 23
 The question here is whether the appellants, under their pleading, could have proved any set of facts which would have entitled them to relief by reason of federal law. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
 
 
 24
 The critical factual allegations of the complaint, by which the appellants sought to establish their standing as "purchasers,"[9] are as follows:
 
 
 25
 "On or about April 29 and April 30, 1964, in the Central District of California, the defendant, O. M. Bell, represented to [plaintiffs] that the shares of stock of Missile to be sold at public auction on April 30, 1964, were currently worthless and would in the future be worthless, and that plaintiffs should not bid on and purchase said shares at the sale.
 
 
 26
 "24.
 
 
 27
 "The representations so made by the defendant, O. M. Bell, were, in fact, false. The true facts were that the shares of Missile were not worthless then, nor would be worthless in the future, but, to the contrary, Missile was a corporation that had been awarded several contracts prior to April of 1964, and had a backlog of orders to fill and had an extraordinary potential for the future.
 
 
 28
 "25.
 
 
 29
 "When defendant, O. M. Bell, made said representations, he knew them to be false; such statements were made by him with the intent to defraud and deceive the plaintiffs and to induce the plaintiffs to act in the matter herein alleged.
 
 
 30
 "26.
 
 
 31
 "Plaintiffs, at the time said representations were made, were ignorant of their falsity, but believed them to be true. In reliance thereon, plaintiffs were induced to and did refrain from bidding on and purchasing the aforementioned shares; had plaintiffs known the true facts, they would not have taken such action."
 
 
 32
 These allegations clearly reveal that appellants never actually purchased or sold the Missile stock. Yet that circumstance does not end our inquiry, for under the liberal interpretation that has sometimes attended the application of the Birnbaum doctrine, there have been cases in which standing has been afforded to persons who, even though not actual purchasers or sellers, have been deemed to have the required status. See e. g., Dudley v. Southeastern Factor & Finance Corp., 446 F.2d 303, 306-308 (5th Cir. 1971); Herpich v. Wallace, 430 F.2d 792, 806-810 (5th Cir. 1970); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787, 797-798 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715, 718-719 (S.D.N.Y.1968).
 
 
 33
 One category in these cases, aptly characterized as enunciating an "aborted purchaser-seller doctrine,"[10] involves transactions that are analogous to the transaction in this case. The similarity is that in each case, the plaintiffs alleged that they had sought to enter a securities transaction as purchasers or sellers, but that the transaction was aborted as a result of the fraud of the defendants. See Opper v. Hancock Secs. Corp., 367 F.2d 157 (2d Cir.), aff'g 250 F.Supp. 668 (S.D.N.Y.1966); Commerce Reporting Co. v. Puretec, Inc., supra; Goodman v. H. Hentz & Co., 265 F.Supp. 440 (N.D.Ill.1967); Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965).
 
 
 34
 While the courts employed varying rationales to arrive at the conclusion that the plaintiffs in these actions qualified as "purchasers" or "sellers" under Birnbaum, there is a common link between the cases which explains the unanimity of the results. This unifying element, lacking in the present case, is the existence of a contractual relationship between the parties which elevated the plaintiffs to the status of statutory purchasers or sellers.[11]
 
 
 35
 The importance of the plaintiff being a party to a prior agreement to purchase or sell the securities is indicated by the Act itself. In section 3(a) (13) of the Exchange Act, 15 U.S.C. Sec. 78c(a) (13), a "purchase" is defined to "include any contract to buy, purchase, or otherwise acquire." Similarly, in section 3(a) (14), 15 U.S.C. Sec. 78c(a) (14), a "sale" is deemed to encompass "any contract to sell or otherwise dispose of." Hence, when the plaintiff enters an agreement to purchase or sell securities, he becomes a statutory purchaser or seller, and thus possesses standing to maintain an action for money damages under Section 10(b) and Rule 10b-5. See, e. g., Herpich v. Wallace, supra at 809; Commerce Reporting Co. v. Puretec, Inc., supra at 719.
 
 
 36
 The lack of a prior contractual relationship,[12] therefore, is fatal to the contention of the appellants here that they should be afforded standing as "purchasers" under the rationale of the "aborted purchaser-seller" cases.
 
 
 37
 Another case urged upon us by appellants as support for their view is Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). While there is language in Crane paralleling the expressions that we have quoted from the Bankers Life opinion,[13] we believe that the Crane decision, read in its entirety, conclusively demonstrates that the present appellants can not be considered "purchasers" or "sellers" of the Missile stock. The plaintiff corporation in Crane alleged that its tender offer was defeated by defendants' manipulation of the market price of the target company's stock. This allegation is comparable to that wherein the appellants here alleged that they were precluded from purchasing the Missile stock by Bell's misrepresentation. The Crane court, however, recognizing the validity of the Iroquois decision, did not afford the Crane Company standing as a "purchaser." To the contrary, the court held that the Crane plaintiff's standing under the Exchange Act and Rule 10b-5 was attributable to its status as a "forced seller" of the securities, relying on the holding to that effect in Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1968). In this case, however, there is absolutely no basis for application of the "forced seller" doctrine,[14] and, as we read Crane, it does not at all support the appellants' argument that they, as "purchasers,"[15] possessed the required standing.
 
 
 38
 Since we perceive no possible theory under which the appellants could be regarded as either "purchasers" or "sellers" of the Missile stock, the challenged judgment of the District Court must be, and it hereby is,
 
 
 39
 Affirmed.
 
 
 
 [1]
 Section 10(b) of the Act provides:
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange-
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."
 
 
 [2]
 The Rule provides:
 "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."
 
 
 [3]
 Specifically, appellants rely upon the decisions in Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967); A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967); Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); and SEC v. Broadwall Secs., Inc., 240 F.Supp. 962 (S.D.N.Y.1965)
 They also contend that the Second Circuit's explanation of these decisions in Iroquois Industries, Inc., v. Syracuse China Corp., 417 F.2d 963, 967-969 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970), does not resolve this issue because of a subsequent decision of another panel of that court which they view as conflicting with Iroquois. Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970).
 
 
 [4]
 The geographical dispersion of the parties to the instant appeal emphasizes this consideration. Both appellants are Delaware corporations, with their principal places of business in New York. The various individual and corporate appellees are either citizens of, or have their principal places of business, in California or Pennsylvania. In addition, Strato Industries, Inc., which owned the Missile stock prior to the California auction sale, was a Florida corporation
 
 
 [5]
 See, e. g., Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970); Simmons v. Wolfson, 428 F.2d 455 (6th Cir. 1970), cert. denied, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971); Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir. 1970); City National Bank of Fort Smith, Ark v. Vanderboom, 422 F.2d 221 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); Jensen v. Voyles, 393 F.2d 131 (10th Cir. 1968); Dasho v. Susquehanna Corp., 380 F.2d 262 (7th Cir.), cert. denied, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967). See generally Rekant v. Desser, 425 F.2d 872, 877 (5th Cir. 1970) ("Bloody but unbowed, Birnbaum still stands.")
 
 
 [6]
 For more complete discussions of the legislative and administrative history of the antifraud provisions, see Kohn v. American Metal Climax, Inc., 458 F.2d 255, 276-278 (3d Cir. 1971) (Adams, J., concurring and dissenting); A. Bromberg, Securities Law-Fraud-SEC Rule 10b-5 Secs. 2.2, 8.8 (1971); Note, 59 Harv.L.Rev. 769, 770 (1946)
 All of these commentaries tend to support the position taken by the Birnbaum and Iroquois courts. See also 3 L. Loss, Securities Regulation 1469 (1961); 6 id. 3617 (Supp. 1969).
 While not urged upon us by the appellants, we feel compelled to comment upon an interesting aspect of the Birnbaum court's analysis which apparently was not noticed by the court in Iroquois.
 When it formally adopted Rule 10b-5, the SEC issued the following explanation of its action:
 "The Securities and Exchange Commission today announced the adoption of a rule prohibiting fraud by any person in connection with the purchase of securities. The previously existing rules against fraud in purchase of securities applied only to brokers and dealers. The new rule closes a loophole in the protections against fraud administered by the Commission by prohibiting individuals or companies from buying securities if they engage in fraud in their purchase."
 SEC Securities and Exchange Act Rel. No. 3230 (1942) (emphasis added); see 8 SEC Ann. Report 10 (1942).
 The Birnbaum court inferred from this statement of administrative purpose that, in extending the Rule's prohibitions to "purchasers," the SEC intended to afford the available remedies to "sellers." Earlier opinions of our court, while not considering the issue of standing now before us, evince an identical understanding of the Rule's purpose. See Ellis v. Carter, 291 F.2d 270, 273 (9th Cir. 1961); Matheson v. Armbrust, 284 F.2d 670, 674-675 (9th Cir. 1960); Errion v. Connell, 236 F.2d 447 (9th Cir. 1956); Fratt v. Robinson, 203 F.2d 627 (9th Cir. 1953).
 The Birnbaum court, relying upon its assessment of the SEC's purpose, thus held that the SEC intended to limit the class of persons who could avail themselves of the private remedies available under the Rule to "purchasers" or "sellers" of securities. At the time Birnbaum was decided, this holding was wholly reasonable. In light of the express language of the SEC's explanation of the Rule, quoted above, the court could validly have concluded that the class of prospective defendants was limited to fraudulent "purchasers" and "sellers." Since the notion that "privity" was required in private causes of action under the securities laws was viable at that time, see, e. g., Joseph v. Farnsworth Radio & Television Corp., 99 F.Supp. 701, 706-707 (S.D.N.Y.1951), aff'd per curiam, 198 F.2d 883 (2d Cir. 1952), it was logical for the Birnbaum court to conclude that the class of plaintiffs in a Rule 10b-5 action for damages should be similarly limited to defrauded "purchasers" and "sellers."
 Certain judicial developments subsequent to Birnbaum, however, preclude us from now assigning the same weight to the quoted SEC Release. It is now clear that a defendant in a private action for damages, in contrast to a plaintiff, need not be a "purchaser" or "seller" of securities See, e. g., Heit v. Weitzen, 402 F.2d 909, 913 (2d Cir. 1968), cert. denied, 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969); cf. Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). In addition, the "privity" requirement, if it ever existed, has, for all practical purposes, been discarded. See 3 L. Loss, Securities Regulation 1767-71 (1961); 6 id. 3890-97 (Supp.1969).
 We have noted the foregoing only to record our view that controlling significance should not be attached to the Birnbaum court's interpretation of administrative intent insofar as that interpretation may have come from the application of outdated legal doctrines. We think the preferable approach is the historical analysis in Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970).
 
 
 [7]
 See 417 F.2d at 967-969. The court's disposition of this argument serves as the principal ground for our rejection of the identical contention advanced by the appellants here. See note 3 supra and accompanying text. As to the appellants' theory concerning the effect of the Crane decision on Iroquois, supra note 3, see our discussion note 15 infra & accompanying text
 
 
 [8]
 "Manhattan was the seller of Treasury bonds and, it seems to us, clearly protected by Sec. 10(b) . . . ." 404 U.S. at 9, 92 S.Ct. at 167 (emphasis added)
 "There certainly was an 'act' or 'practice' within the meaning of Rule 10B-5 which operated as 'a fraud or deceit' on Manhattan, the seller of the Government bonds." Id. (emphasis added).
 ". . . . Manhattan was injured as an investor through a deceptive device which deprived it of any compensation for the sale of its valuable block of securities." Id. at 10, 92 S.Ct. at 168 (emphasis added).
 "The crux of the present case is that Manhattan suffered an injury as a result of deceptive practices touching its sale of securities as an investor." Id. at 12-13, 92 S.Ct. at 169 (emphasis added).
 ". . . . [W]e have dealt only with allegations and with the question of law whether a cause of action as respects the sale by Manhattan of its Treasury bonds has been charged under Sec. 10(b)." Id. at 13, 92 S.Ct. at 169 (emphasis added).
 See also id. at 13 n.10, 92 S.Ct. at 165 n.10.
 
 
 [9]
 An alternative argument made in the District Court was that by virtue of MCI's ownership of 44% of the stock of Strato Industries, Inc., appellants had standing of "forced sellers" of the Missile stock. In this respect, however, we note that appellants at no time sought to maintain their suit in a derivative capacity, on behalf of Strato. See note 14 infra and accompanying text
 
 
 [10]
 See generally 6 L. Loss, Securities Regulation 3614 (Supp.1969)
 
 
 [11]
 In the three customer-broker cases, orders to buy or sell securities were placed with the broker by the customer, but the orders were never actually carried out because of the broker's deception. See Goodman v. H. Hentz & Co., 265 F.Supp. 440 (N.D.Ill.1967); Opper v. Hancock Sec. Corp., 250 F.Supp. 668 (S.D.N.Y.), aff'd, 367 F.2d 157 (2d Cir. 1966); Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965). See also A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967) (customer's failure to fulfill agreement to purchase)
 In the remaining case, Commerce Reporting Co. v. Puretec, Inc., 290 F.Supp. 715 (S.D.N.Y.1968), plaintiff had contracted with defendant to purchase securities that defendant eventually sold to another. Cf. Allico National Corp. v. Amalgamated Meat Cutters & Butcher Workmen, 397 F.2d 727 (7th Cir. 1968).
 The District Court recognized the vitality of the "aborted purchaser-seller" cases, and after carefully analyzing the factual situations therein in comparison to the appellants' factual allegations, found them to be distinguishable
 "because in our case there is no certainty that but for defendant's actions MCI would have been the purchaser of the Missile stock sold at the sheriff's sale. That was contingent not only on their bidding, but also on their making the highest bid. Plaintiffs were not parties to any agreement to purchase Missile shares. Plaintiffs were not even induced to refrain from accepting an outstanding offer. Plaintiffs here were induced merely to refrain from making a bid at a public auction where, had their bid proved to be the highest made, they would have been able to become purchasers." (emphasis added) While we agree with the District Court that the claim of the appellants is highly speculative, that circumstance alone could not necessarily deprive them of the opportunity to prove a set of facts entitling them to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The lack of an agreement, however, does distinguish the present case from those decisions which permit aborted purchasers and sellers to maintain an action for damages.
 
 
 [12]
 We recognize that the term "contract" in Sections 3(a) (13) and 3(a) (14) must be given a broad, liberal interpretation. See Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); Dasho v. Susquehanna Corp., 380 F.2d 262, 266 (7th Cir.), cert. denied, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967). Yet however flexibly that word might be construed, there is simply no basis, on the record here, for a conclusion that the appellants were parties to a "contract" to purchase or sell the Missile stock
 
 
 [13]
 See 419 F.2d 797-798
 
 
 [14]
 In note 9, supra, we noted the appellants' theory that they could be deemed "forced sellers" of the Missile stock. In rejecting this argument, the District Court stated,
 "This argument fails however because there is no causal connection between Strato's sale of the Missile shares and defendants' misrepresetations. Rule 10b-5 protects shareholders induced to sell by the fraud of a third party. However, in the present case Strato sold its shares of Missile not in reliance upon Bell's misrepresentations, but pursuant to a judicial order of execution of a judgment."
 The District Courts reasoning was not wholly correct. It is now clear that if the alleged misrepresentation had the effect of decreasing the amount Strato received for the Missile shares, Strato, but not its individual shareholders, might state a valid federal claim against the perpetrators of the fraud. See Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 10-13, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).
 The proper reason for denying MCI standing as a "forced seller" is that it never owned any Missile shares. Compare Dudley v. Southeastern Factor & Finance Corp., 446 F.2d 303 (5th Cir. 1971); Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). Having chosen not to maintain this action in a derivative capacity on behalf of Strato, the actual seller, the appellants cannot now, at this late time, bootstrap themselves into the position of "forced sellers."
 
 
 [15]
 While the divergent results in Crane and Iroquois have led some observers to view the cases as conflicting, see e. g., 38 U.S.L.W. 1101 (1970); supra note 3, we do not agree with that assessment. We reiterate that the Crane court explicitly adhered to the purchaser-seller rule and distinguished Iroquois by applying the "forced seller" rationale of Vine. More importantly, however, in the context of the instant case, is the circumstance that neither Crane nor Iroquois considered the plaintiffs to be "purchasers," even though the plaintiffs in both cases had alleged that the fraudulent practices of the defendants had precluded them from purchasing securities