**TRANS CONTAINER SERVICES (BASEL) A.G., Plaintiff-Appellant,**

v.

**SECURITY FORWARDERS, INC., Defendant-Appellee.**

**TRANS CONTAINER SERVICES (BASEL) A.G., Plaintiff-Appellee,**

v.

**SECURITY FORWARDERS, INC., Defendant-Appellant.**

**Nos. 83–1637, 83–1674.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 14, 1984.

Decided Feb. 1, 1985.

Graydon S. Staring, Lillick, McHose & Charles, San Francisco, Cal., for plaintiff-appellant.

R. Bruce Hoffe, Watson & Hoffe, Richmond, Cal., for defendant-appellee.

Before MERRILL, GOODWIN and ALARCON, Circuit Judges.

GOODWIN, Circuit Judge.

Trans Container, a Swiss corporation, appeals from a judgment which awarded Security Forwarders, a Louisiana corporation, $114,739.81 general and punitive damages for conversion of property.

This action grew out of a dispute between Trans Container (acting through its English subsidiary, Atlantic-Pacific Shipping Company) and Security Forwarders over the performance by Trans Container of services related to the movement between the United States and England of household goods belonging to United States military personnel. Security does not dispute a debt to Trans Container, but does dispute the methods Trans Container used to collect the debt.

Trans Container initiated this action as a breach of contract claim to recover money allegedly owed by Security. Security successfully counterclaimed, alleging that Trans Container committed fraud and conversion and breached various contracts. We affirm in part and remand for recomputation of the judgment.

The parties were participating together in the movement of personal property for a United States agency, the Military Traffic Management Command. This movement of personal property required the use of standardized containers. With good care and proper handling, the wooden containers could be reused for several shipments. While the containers were not fungible, there was sufficient standardization so that containers owned by one company engaged in the business could be used by another. The ability of a particular company to obtain business from the military during fairly competitive periods was closely related to the availability of a company's supply of owned containers at the critical times and places.

In this competitive market, Trans Container acts in England as a general and local agent for a number of carriers and freight forwarders such as Security. Trans Container stores empty containers, packs goods and prepares containers for shipment. The forwarder, like Security, arranges for actual shipment to the United States and other designated destinations. It is apparently standard procedure in this market for a local agent, such as Trans Container, to act as agent for a number of competing forwarders. Trans Container pools the containers it receives from all its principals and dispatches containers on a first-in first-out basis to minimize weather damage to the wooden containers.

When Security fell behind in its payments to Trans Container, Trans Container purported to place liens on containers owned by Security, which the district court held that it had no right to do. Trans Container also sold certain of Security's containers to another competing forwarder.

As the result of the purported liens and the unauthorized sale of containers to its competition, Security was substantially put out of business for a time. The trial court found generally for Security on all legal questions and based its judgment on the net general damages for conversion over the amount Security owed Trans Container, plus $50,000 punitive damages.

■ The district court held that pursuant to the parties' contracts, English law governed this dispute. California conflict

of law principles, which also apply, similarly require application of English law. *See Liew v. Official Receiver and Liquidator (Hong Kong),* 685 F.2d 1192, 1195–96 (9th Cir.1982). Further, the court held that Trans Container had no lien on Security's shipping containers, and that Trans Container's withholding of containers constituted a conversion. The court was correct on that point. The sum awarded for conversion of Security's property, however, apparently involved counting some of the containers twice.

■ This court must independently satisfy itself that the trial court relied upon the correct law in its application of English law. *See generally* Fed.R.Civ.P. 44.1; 9 Wright & Miller, *Federal Practice & Procedure: Civil* § 2446.

■ Trans Container claims that it held a possessory lien upon Security's goods and thus possessed and dealt with Security's containers legally. Under English law, possessory liens are of two kinds: particular and general liens. A particular lien extends only to the particular goods about which the dispute arose and does not attach to any other goods or services which an agent has in his possession. In contrast, a general lien includes not only the goods related to the dispute but also to the balance of any general account between the parties. Schmitthoff & Sarre, *Charlesworth's Mercantile Law* (13th Ed.1977) 379–80.

Every agent is entitled to a lien on the goods of his principal with respect to any claims against the principal arising out of the agency relationship, unless the right of lien is inconsistent with the special purpose for which the goods were entrusted to him. 1 *Halsbury's Law of England* (4th ed. & 1984 suppl.), *Agency* ¶ 810.[1]

A lien of an agent is, as a rule, a particular lien, confined to such claims as arise in connection with the particular goods and chattels with respect to which the dispute arose. A general lien exists only when expressly provided by contract or when a general lien is common in a particular trade. 28 *Halsbury's, Lien,* ¶ 516. Otherwise, general liens are allowed to be asserted under English law only by bankers, solicitors, factors, insurance brokers, stockbrokers, wharfingers and packers. 1 *Halsbury's, Agency,* ¶ 810; 28 *Halsbury's, Lien,* ¶ 525. *See Bock v. Gorrissen* [1860] 45 Eng.Rep. 689, 692. Trans Container does not contend that it contracted for a general lien or that general liens are the common custom of the trade. Instead, Trans Container asserts it has a special right to a general lien as a packer.

A packer is defined as "a person employed by merchants to receive, and (in some instances) to select, goods for them from manufacturers, dyers, calenders, etc., and pack the same for exportation," *Strouds Judicial Dictionary* (3d ed.) Packers were given the right to assert a general lien in *In re Witt, ex parte Shubrook,* [1876] 2 Ch.D. 489, but, to be entitled to a general lien, a packer must also be a factor. 28 *Halsbury's, Lien* ¶¶ 525, 526. A factor must be a mercantile agent who, employed by a merchant, is entrusted with goods for the purpose of resale. 2 *Saunders' Words & Phrases,* "Factor," at 215 (1969).

Trans Container's activities, however, do not fall within the definition of a packer and factor as defined by *Strouds* and *Saunders.* It is undisputed that Trans Container packs goods for shipment but Trans Container is not employed by a merchant. It merely packed military household goods for shipment and is not involved with the sale of merchandise. Because Trans Container is not a factor, as that term is defined, it cannot hold a packer's general lien. Reynolds & Davenport, *Bowstead on Agency* (1976) § 71, *citing Langley, Beldon & Gaunt, Ltd. v. Morley,* [1965] 1 Lloyd's Rep. 297, 305.

■ Every agent has a particular lien on the goods of his principal if the agent has actual or constructive possession of the goods. 1 *Halsbury's, Agency,* ¶¶ 810, 811,

---

1. Hereinafter cited as *Halsbury's.*

*citing Ridgway v. Lees,* [1856] 25 L.J. Ch. 584 (actual); *Bryans v. Nix,* [1839] 150 Eng.Rep. 1634 (constructive). Trans Container lost its particular lien when it sold the containers to one of Security's competitors. 28 *Halsbury's, Lien* ¶ 523, *citing Pennington v. Reliance Motor Works Ltd.,* [1923] 1 K.B. 127. Trans Container presented no evidence that, when it transferred Security's containers to another forwarder, it explicitly or implicitly reserved its right of a lien over those containers. *See* 1 *Halsbury's, Agency* ¶ 813, *citing Sweet v. Pym,* [1800] 1 East 4; *Langley, Beldon & Gaunt, Ltd. v. Morley,* [1965] 1 Lloyd's Rep. 297.

Trans Container did not have the right to sell or otherwise transfer the Security containers without Security's consent. *Charlesworth's Mercantile Law* at 379–80. When it did so, Trans Container converted the containers. *Bowstead on Agency* § 70, *citing Siebel v. Springfield,* [1863] 8 New Rep. 36.

Under the English system of compensatory damages, exemplary (or punitive) damages are an anomaly and are awarded only for torts committed in three specific categories. *Rookes v. Barnard,* [1964] A.C. 1129, 1221.

The three categories of cases in which exemplary damages may be given include cases of "oppressive, arbitrary or unconstitutional action by the servants of the government," cases in which "the defendant's conduct has been calculated by him to make a profit for himself which may well exceed the compensation payable to the plaintiff," and thirdly, cases in which exemplary damages are expressly authorized by statute. *Rookes v. Barnard,* at 1226–27. *See* 1 *Chitty on Contracts* (24th ed. 1977) § 1560. The district court found that Trans Container's actions fall under the second category of cases, and we agree.

The court will award punitive damages where a defendant with a cynical disregard for a plaintiff's rights has calculated that the monetary gain arising out of his wrongdoing will most likely exceed the damages at risk. *Rookes v. Bernard,* at 1227. The

underlying policy reasons for this exception of awarding exemplary damages are theories of unjust enrichment and deterrence.

*Cassel & Co. v. Broome,* [1972] A.C. 1027, further clarified this "cynical disregard doctrine" by stating that in order to award exemplary damages it must be proved that the party "knew that it was unlawful or suspecting it to be unlawful deliberately refrained from taking obvious steps which, if taken, would have turned suspicion into certainty ... and that he did direct his mind to the material advantages to be gained by committing the tort and came to the conclusion that they were worth the risk of having to compensate the plaintiff if he should bring an action." *Id.* at 1130.

■ Given the findings of fact of the district judge, Trans Container's conduct appears to have been motivated by a "cynical disregard" for Security's rights and by a desire to profit from conversion of the containers. Trans Container violated its agreement with Security and chose to provide containers to other carriers. Trans Container entered into an agreement with another carrier to supply it with Security's containers after it appeared that the other carrier had made a better bid for the business than Security. This transaction allowed Trans Container to make a profit by shifting business from Security to a competitor using Security's property.

■ As a defense, Trans Container alleges that the "game plan" which Trans Container proposed to Security in order to induce Security to do business with Trans Container is in violation of the antitrust laws. This issue was not raised in the complaint or in the opening brief. An issue not raised before the trial court cannot be raised for the first time on appeal. *Rothman v. Hospital Service of Southern California,* 510 F.2d 956, 960 (9th Cir.1975).

Security is, therefore, entitled to damages for the containers converted by Trans Container.

■ The trial court made no error in setting the replacement value of the boxes at $180 each. True, some of the boxes were not new, but the court had the power to award Security replacement value in order to make whole the victim of conversion. This court accepts the trial court's findings of fact on this score.

■ As Trans Container contends, and Security concedes, when the trial judge calculated damages he added 86 containers to other figures to reach the conclusion that there were 753 containers involved (Conclusion 11). The judge apparently counted twice some of the boxes that Trans Container provided to another carrier. The court, upon remand, can recompute the conversion damages without retrying the case.

■ Trans Container further disputes the finding that Trans Container sold 86 containers. Testimony at trial from one witness indicates that Trans Container might have sold 50 containers, more or less, to a competitor of Security. Other testimony did not indicate how many were sold. The number could range from 50 to 100. Therefore, while there may have been some element of guesswork in fixing 86 as the number sold, the burden was on the converter to come forward with a better number. The fact that Trans Container sold some of Security's boxes to a competitor placed the burden on Trans Container to explain what happened to the missing containers. The trial court found that Trans Container held 492 used and 175 new boxes belonging to Security. This finding is not clearly erroneous.

■ A number of other points were briefed and argued but we have concluded that the trial court was essentially sound in all legal rulings but one: Pursuant to Fed. R.Civ.P. 54(d), the prevailing party is entitled to costs unless the court rules otherwise. Whether or not to award costs is a decision made by the trial judge and "his decision will not be overturned unless he has abused his discretion." *Chavez v. Tempe Union High School District*, 565

F.2d 1087, 1095 (9th Cir.1977). However, the trial judge in this case gave no reasons for refusing costs to Security.

In *Subscription Television Inc. v. Southern California Theatre Owners Association*, 576 F.2d 230, 234 (9th Cir.1978), the court held that the "trial court must state reasons for the denial of costs so that the appellate court will be able to determine whether or not the trial court abused its discretion." Therefore, upon remand, the trial court should allow costs to Security or state the reasons for denying them.

Except for the calculation of general damages that was apparently based upon a double count of some containers, the judgment can be affirmed. We vacate and remand to the district court to enter a corrected judgment and to award costs or state reasons why costs should be denied. If further litigation is required to ascertain the exact count, it should be at the expense of Trans Container.

Vacated and remanded.