Robert E. MOSHER and William W. Martin, individually and on behalf of all other persons similarly situated, Plaintiffs-Appellants,

v.

William Everett KANE and Barbara Jean Kelly, Defendants-Appellees.

No. 84–6318.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1985.

Decided March 17, 1986.

Richard L. Noble, Stephen W. Holohan, Los Angeles, Cal., for plaintiffs-appellants.

Michael L. Thornburg, Louis M. Meisinger, Hill, Wynne, Troop & Meisinger, Los Angeles, Cal., for defendants-appellees.

Before BARNES, GOODWIN and BOOCHEVER, Circuit Judges.

BARNES, Senior Circuit Judge:

Robert E. Mosher ("Mosher") and William W. Martin ("Martin") appeal from the district court's dismissal of their complaint for failure to state a claim upon which relief can be granted, under Fed.R.Civ.P. 12(b)(6). We have jurisdiction under 28 U.S.C. § 1291 and we reverse the dismissal of this action.

## I. FACTS

The basic facts underlying the filing of this action have been set forth in the related appeal, *In re A & C Properties*, 784 F.2d 1377 (9th Cir.1986), and need not be repeated herein. However, we review briefly the procedural factors which led to the dismissal of this action.

Martin and Mosher filed this action [1] in the United States District Court on August 28, 1981. They alleged that K & K, William Everett Kane ("Kane") and Barbara Jean Kelly ("Kelly") violated various sections of the federal securities law when exchanging stock in K & K for the assets of A & C Properties and that material misrepresentations were made when K & K filed with the SEC, a registration statement, consisting of a prospectus and proxy solicitation. Appellants argue that these misrepresentations violated: (1) Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated thereunder; (2) Section 14(a) of the Securities and Exchange Act of 1934 and Rule 14a–9 promulgated thereunder; and (3) Section 17(a) of the Securities Act of 1933. The appellants filed an amended complaint on December 11, 1981.

Thereafter, motions to dismiss were filed by the defendants, and the district court determined on hearing the motions to dismiss, that appellants had not stated a claim upon which relief could be granted. The Court dismissed the first amended complaint, without leave to amend, pursuant to Fed.R.Civ.P. 12(b)(6), on August 16, 1984. Appellants timely appeal this dismissal.

## II. DISCUSSION

Appellants raise several issues to be decided on review:

1. Whether the complaint alleges sufficient facts to state a claim for relief under Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78j(b)), and Rule 10b–5 promulgated thereunder;

2. Whether the complaint alleges sufficient facts to state a claim for relief under Section 14(a) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78n), and Rule 14a–9 promulgated thereunder;

3. Whether there exists an implied private right of action under Section 17(a) of the Securities Act of 1933 (15 U.S.C. § 77q(a)), and if so, whether the complaint alleges sufficient facts to state a claim for relief thereunder;

4. Whether a common law action for fraud on the court may be maintained where the only pleaded jurisdictional basis is one of federal question and violation of federal law;

5. Whether the district court abused its discretion in refusing to allow plaintiffs to file amended complaints and in dismissing the action.

### A. *Standard of Review.*

On a motion to dismiss for failure to state a claim, a complaint is liberally construed in the plaintiff's favor, generally taking as true all material facts alleged in the complaint. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir.1983). Further, a complaint should not be dismissed under this rule " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834 (9th Cir.1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 99, 101–02, 2 L.Ed.2d 80 (1957)). The sufficiency of a complaint is a question of law which we review de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B. *Section 10(b) and Rule 10b–5 Claims.*

When considering a Section 10(b) [2] and Rule 10b–5 [3] claim for relief, the court

---

**1.** Appellants filed this action as a class action pursuant to Fed.R.Civ.P. 23(b). However, the district court never certified the class.

**2.** Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) states:

It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce or of the

**3.** See note 3 on page 1388.

should liberally construe that claim in order to effectuate the policies underlying the federal securities laws. *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1313 (9th Cir.1985). Appellants argue that their Section 10(b) and Rule 10b–5 claims arose (1) out of the 1977 compromise, (2) from the creation of the ESOT,[4] (3) out of K & K's false and misleading registration statement, and (4) as a result of the alleged "forced sale" which occurred when the rights to the shares of K & K stock which they benefically owned were transferred to the trustee.

■ The district court dismissed appellants' complaint on the basis that they did not have standing to sue. In order for a private plaintiff to have standing to bring an action under Section 10(b) or Rule 10b–5, the plaintiff must have been a purchaser or seller of the securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461, 463 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). However, a contract to purchase or sell securities satisfies this standing requirement. *Blue Chip Stamps,* 421 U.S. at 750–51, 95 S.Ct. at 1932. Appellants present three arguments in support of a finding that a contract for a purchase and sale existed.

*1977 Compromise.*

■ Appellants first argue that the 1977 Compromise constituted a contract for purchase and sale of securities because it provided for the issuance of K & K stock to appellants in exchange for the surrender of certain rights by appellants. The district court rejected this argument, finding that although appellants had entered into a final unconditional contract, they were neither purchasers or sellers, but allegedly beneficial owners.

The 1977 Compromise provided for appellees to cede stock to K & K, in exchange for the release by appellants of legal actions they might have against the appellees. Since a purchase or sale of stock by a corporation is not deemed to be a purchase or sale by the corporation's shareholders, *see, e.g., Rathborne v. Rathborne,* 683 F.2d 914, 919 (5th Cir.1982), appellants do not have standing to allege a violation under the 1977 Compromise.

*Plan of Arrangement.*

■ Although no actual purchase or sale was ever consummated, the plan of arrangement which was prepared and approved by the shareholders in accordance with the 1977 Compromise provided for distribution of stock to appellants. Thus, under the "aborted purchaser-seller doc-

---

mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**3.** Rule 10b–5, 17 C.F.R. 240.10b–5 (1985), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

**4.** The ESOT is the Employee Stock Option Trust, implemented by K & K in March 1978, to be qualified as a stock bonus plan with the Internal Revenue Service, pursuant to Section 401 of the Internal Revenue Code, as amended. The trust was to be administered by an independent trustee, and provided for full time K & K employees to obtain a ten percent per year portion of the trust assets based upon employee compensation.

trine," [5] appellants have standing under the Plan to allege violations of Section 10(b) and Rule 10b–5. *See Mount Clemens Industries, Inc. v. Bell,* 464 F.2d 339, 345 (9th Cir.1972).

The district court found that the Plan did not become final, since it required the approval of the bankruptcy court. The court found, therefore, that no executory contract existed and appellants failed to meet the purchase or sale requirement required by the Securities and Exchange Act. *See Northland Capital Corp. v. Silver,* 735 F.2d 1421, 1427–30 (D.C.Cir.1984) (no binding agreement and therefore no sale exists where disputes remain concerning actual required final documentation with respect to a contract which has been approved by both sides).

Nonetheless, although the Plan was never approved by the bankruptcy court, it was in fact one of the conditions of the 1977 Compromise, which the district court found to be an executed contract. Furthermore, the registration statement, including the prospectus and proxy solicitation, which was filed with the SEC was also a condition of the 1977 Compromise. Appellants alleged in their complaint that the fraud perpetrated by appellees was due to the statements and misrepresentations which appeared in the registration statement, and that appellees' fraud induced appellants to vote to approve the Plan. They further argue that it was this fraud which prevented the bankruptcy court from approving the Plan. Thus, the Plan was an executed contract whereby performance was allegedly frustrated by the appellees' fraud. There was a contractual relationship between the parties, and the transaction was allegedly aborted as a result of the fraud of the defendants. *Mount Clemens Industries, Inc. v. Bell,* 464 F.2d 339, 345 (9th Cir.1972). This contractual rela-

tionship elevated appellants to the status of statutory purchasers, *see Mount Clemens,* 464 F.2d at 345, thereby satisfying the purchaser requirement under the securities act. *See, e.g., Davis v. Davis,* 526 F.2d 1286, 1289 (5th Cir.1976).

### Forced Sale Doctrine.

Appellants also argue that the transfer to the trustee of the shares in K & K which they owned beneficially constituted a "forced sale," thereby qualifying them as sellers under the 1934 Securities and Exchange Act. We reject this argument.

The forced sale doctrine was first recognized in *Vine v. Beneficial Finance Co.,* 374 F.2d 627 (2d Cir.1967), *cert. denied,* 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), and has been adopted by the Ninth Circuit. *See Shivers v. Amerco,* 670 F.2d 826, 830 (9th Cir.1982).

In essence, the doctrine provides that where a defendant is engaged in a scheme for the purpose of forcing the plaintiffs to convert their shares for money or other consideration, such acts by the defendant allow a plaintiff standing to sue under the securities act. *See Landy v. Federal Deposit Insurance Corp.,* 486 F.2d 139, 158–59 (3rd Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). Thus, where there has been a fundamental change in the nature of the plaintiff's investments, a forced sale will be deemed to have occurred. *Rathborne v. Rathborne,* 683 F.2d at 920.

Appellants Mosher and Martin have failed to allege that an actual liquidation of K & K has occurred or that there has in fact been a fundamental change in the nature of their investments. Thus, the forced sale doctrine does not apply.

---

**5.** The "aborted purchaser-seller doctrine" was first recognized by this circuit in *Mount Clemens Industries Inc. v. Bell,* 464 F.2d 339 (9th Cir.1972), and has been subsequently followed. *See Lewelling v. First California Co.,* 564 F.2d 1277 (9th Cir.1977); *Walling v. Beverly Enterprises,* 476 F.2d 393 (9th Cir.1973). The doc-

trine provides that a plaintiff has standing to bring and pursue an action under Section 10(b) as long as he or she had a contract to complete a securities transaction, even though the transaction was never consummated. *See* 30 Fed. Proc., L.Ed. § 70:323 (1985).

## C. Section 14(a) and Rule 14a–9 Claims.

Appellants argue that K & K, Kane and Kelly violated Section 14(a)[6] and Rule 14a–9[7] when they filed the registration statement and the prospectus and proxy solicitation with the SEC. The district court dismissed these claims on the ground that appellants had failed to allege a sufficient causal nexus between their injury and the alleged wrongful acts, and that any injury was too attenuated to support their claim.

■ An essential element of Section 14(a) is the existence of a causal nexus between the alleged violation and the plaintiff's injury. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970). The plaintiffs must show that their harm "resulted from the corporate transactions which were authorized as a result of the false or misleading proxy solicitations." *Abbey v. Control Data Corp.*, 603 F.2d 724, 732 (8th Cir. 1979), *cert. denied*, 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980), *cited with approval* in *Gaines v. Haughton*, 645 F.2d 761, 775 n. 23 (9th Cir.1981), *cert. denied*, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).

■ In this case, the harm suffered by the plaintiffs resulted not from the corporate transactions authorized as a result of the allegedly false or misleading proxy solicitations, but rather the failure to approve the Plan, which failure prevented corporate transactions from occurring. This failure resulted from the false or misleading proxy solicitation. However, because the appellees' acts caused the failure of the corporate transactions to occur, we hold this to be sufficient to establish a claim under Section 14(a) and Rule 14a–9.

## D. Section 17(a) Claim.

■ Under Section 17(a)[8] of the Securities Act of 1933, it is a violation to engage in any scheme to defraud in connection with the sale of a security.[9] In order to

---

**6.** 15 U.S.C. § 78n(a) states:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security ... registered pursuant to [this Title].

**7.** 17 C.F.R. § 240.14a–9 False or misleading statements.

(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

(b) The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made.

**8.** Section 17(a), 15 U.S.C. § 77q(a) provides:

It shall be unlawful for any person *in the offer or sale* of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. [Emphasis added.]

**9.** Appellees argue that we should go en banc and overrule prior Ninth Circuit precedent and find that no implied private right of action exists under section 17(a).

We recognize that the Supreme Court has three times specifically reserved this question and declined to decide it. *See Herman & Mac-*

bring a claim under section 17(a), the plaintiff must be a purchaser or seller. *See, e.g., In re Equity Funding Corp.,* 416 F.Supp. 161 (C.D.Cal.1976).

Appellees argue that section 17(a) is narrower in scope than section 10(b) and that appellants have not sufficiently alleged the fraud in the offer or sale of securities. Several courts which have interpreted the language of the two statutes have held that the word *in* under section 17(a), is narrower. than the phrase *in connection with,* under section 10(b). *See Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F.Supp. 1314, 1355 (S.D.N.Y.1982); *Maryville Academy v. Loeb Rhoades, & Co.,* 530 F.Supp. 1061, 1065–66 (N.D.Ill.1981). However, even if we assume that section 17(a) is more narrow in scope than section 10(b), we are satisfied that appellants have, at least facially, pleaded a complaint sufficient to state a claim for relief.

### E. *Common Law Fraud.*

 Appellants argue, for the first time on appeal, that they should be able to maintain an action for common law fraud under a theory of pendant jurisdiction, even though they only pleaded violations of federal law in their complaint filed in the district court. An issue not raised before the trial court cannot be raised for the first time on appeal. *Trans Container Services v. Security Forwarders, Inc.,* 752 F.2d 483, 487 (9th Cir.1985). Therefore, we leave to the district court on remand the determination of whether the common law fraud action is properly before it.

*Lean v. Huddleston,* 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975). We are further cognizant of the fact that there is a split in the circuits as to whether an implied private right of action should be recognized under section 17(a). *Compare Feldman v. Simkins Industries,* 679 F.2d 1299 (9th Cir.1982) (holding that § 17(a) implies a private right of action); *accord Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808 (9th Cir.1981); *and Kirshner v. United States,* 603 F.2d 234 (2d Cir.1978) (same), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *and Newman v. Prior,* 518 F.2d 97

### F. *Filing of an Amended Complaint.*

 The Federal Rules of Civil Procedure provide that leave to amend a complaint should be freely given when justice so requires. Fed.R.Civ.P. 15(a). Where, as here, the parties have not engaged in intensive discovery, and allowing appellants to file an amended complaint would not unduly burden or prejudice the appellee, we are mindful of the liberal pleading provisions of the Federal Rules, and remand the matter to allow the appellants to file an amended complaint, if they so desire. *See e.g., Securities Investor Protection Corp. v. Vigman,* 764 F.2d at 1318.

## III. CONCLUSION

Although the district court presented a careful and well reasoned analysis in its order to dismiss, we feel the better policy is to reverse the judgment of the district court, and remand this action to allow appellants to amend their complaint and proceed with their action. We do so noting that a ruling on the sufficiency of the complaint is not a forecast of what will be the outcome of the case. " 'Once the matter gets beyond what the lawyers in legalese say the facts are and the Court sees what the real facts are, it may well wash out on summary judgment, ... or if not then later on motion for directed verdict after the plaintiff's or all of the evidence is in.' " *Davis v. Davis,* 526 F.2d at 1290, (*quoting Tyler v. Peel Corp.,* 371 F.2d 788, 792 (5th Cir.1967)).

REVERSED and REMANDED.

(4th Cir.1975) (same); *and Daniel v. International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America,* 561 F.2d 1223 (7th Cir.1977) (same); *accord Surowitz v. Hilton Hotels Corp.,* 342 F.2d 596 (7th Cir.1965), *rev'd on other grounds,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) *with Keys v. Wolfe,* 709 F.2d 413 (5th Cir.1983) (holding that an implied private right of action is not supported under § 17(a)); *accord Landry v. All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982); *and Shull v. Dain, Kalman and Quail, Inc.,* 561 f.2d 152 (8th Cir.1977) (same); *accord Greater Iowa Corp. v. McLendon,* 378 F.2d 783 (8th Cir.1967).

As one panel of the court we have no authority to overrule *Feldman* and *Stephenson,* and in any event we believe that the better view is to recognize an implied private right of action.