**William S. DAVIS, Plaintiff-Appellee,**

**v.**

**T. Cullen DAVIS et al.,
Defendants-Appellants.**

**No. 75–3080
Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1976.

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Cecil E. Munn, Sloan B. Blair, Fort Worth, Tex., for defendants-appellants.

William C. Garrett, W. Stephen Swayze, Dallas, Tex., Richard E. Miles, Fort Worth, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, GODBOLD and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This action has been brought under § 10(b) of the Securities and Exchange Act of 1934[1] and Rule 10b–5[2] of the Regulations, promulgated thereunder, by plaintiff William S. Davis against the individual defendants T. Cullen Davis and Kenneth W. Davis, Jr., and the corporate defendants Cummins Sales & Service, Inc., Mid-Continent Supply Co., Great Western Drilling Co., Kendavis Industries International, Inc. and Stratoflex, Inc. Plaintiff and the individual defendants each own approximately 30% of the outstanding shares of the corporate defendants, which were left to them by their father.

The complaint asserts that the defendants have entered into, and are continuing, a fraudulent scheme of coercive conduct and manipulative devices designed to force plaintiff to sell his shares in

---

1. Section 10 of the Securities and Exchange Act of 1934 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

15 U.S.C.A. § 78j.

2. Rule 10b–5 of the Regulations of the Securities Exchange Commission reads in its entirety as follows:

"Reg. § 240.10b–5. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

§ 17 CFR § 240.10b–5.

Mid-Continent and Great Western to the defendants at prices less than those fixed by contract[3] and at a small fraction of the reasonable value of the shares.

Defendants filed a motion to dismiss "for lack of jurisdiction over the subject matter," asserting that plaintiff had not alleged a purchase or sale of securities. The District Court denied the defendants' motion to dismiss, but it certified its order under 28 U.S.C.A. § 1292(b) to permit an interlocutory appeal. By order dated July 23, 1975, this Court allowed the appeal.

Since this matter comes before us on plaintiff's complaint and defendants' motion to dismiss, we accept as we must the facts alleged in the complaint as true.

As stated in the complaint, the defendants' manipulative scheme and course of conduct consists of numerous acts directed at forcing plaintiff to sell his securities at a grossly inadequate price. These acts include (i) depriving plaintiff access to or control over funds owned by him, any return on his investment, or access to corporate information, (ii) destroying the availability to plaintiff of credit from his corporate holdings, and (iii) clouding title to plaintiff's shares.

When the coercive scheme commenced, certain of the corporate defendants held either options or contracts to purchase plaintiff's shares in those corporations upon the termination of plaintiff's employment. Following a series of disagreements over management decisions, plaintiff was discharged from all positions with the various corporate defendants, and the contracts to purchase plaintiff's stock were thus triggered. Defendants, however, have refused to purchase plaintiff's shares at the price fixed by contract, even though that price is already below fair market ·value. Instead, after a series of maneuvers de-

signed to make plaintiff financially destitute, they have offered to buy plaintiff's stock for a fraction of the contract price.

The scheme asserted in the complaint is multi-faceted. The individual defendants are withdrawing earnings from the corporate defendants in the form of large salaries and fringe benefits while cutting plaintiff off from every equivalent return on his investment by not declaring any dividends. The individual defendants have placed corporate assets and resources behind individual borrowings so that tremendous sums of cash are· made available to the defendant T. Cullen Davis without the necessity of declaring any dividends that would be shared with plaintiff and thus enable plaintiff to resist the financial pressure brought upon him.

The defendants are depressing the value which plaintiff can obtain from others for his shares, thereby forcing their sale to defendants, by denying plaintiff all financial information concerning the corporate defendants (except as to Stratoflex, whose public shareholders introduced the necessity of public disclosure under federal securities laws). Defendants' denial of information has been accomplished in part by firing employees who have so much as spoken with plaintiff.

Plaintiff would have financial resources from credit based upon his substantial, though disadvantaged, stock holdings but for the acts of defendants. That credit would strengthen his ability to withstand the other financial pressures. To prevent plaintiff from receiving credit based upon his stock holdings in the corporate defendants, defendants have maliciously filed exaggerated "damage" claims and caused the publication thereof in newspapers so as to hamper and prevent plaintiff from obtaining any appreciable loans. ·

---

**3.** A second count alleges various offenses actionable under the laws of the State of Texas. No diversity jurisdiction is claimed, and the second count is before the Court as a matter of pendent jurisdiction. Thus, federal jurisdiction of the complaint hinges on the allegations in the first count relating to violations of the federal securities laws.

In order to impede and attempt to destroy plaintiff's right to dividends from the ample earnings of the defendant corporations and to force plaintiff to sell, the defendants have engaged in a rapid, reckless program of acquisitions consuming all the cash coming into the companies and running up debts in excess of $150,000,000.00 in those corporations, often upon terms prohibiting dividends.

These are the major facets of the scheme asserted in the complaint. In short, the scheme consists of refusing to honor the contracts to purchase plaintiff's shares at the contract price, and cutting plaintiff off from all financial resources in order to force him to sell his shares to the defendants for a grossly inadequate consideration.

Plaintiff prays for equitable relief—he does not seek damages—against defendants' scheme in various prayers designed to destroy the effectiveness of that scheme by requiring the corporations to provide plaintiff with some return on his investment and thereby eliminate the necessity of his selling.

The main issue on appeal is whether plaintiff qualifies as a purchaser or seller of securities so as to fall under the federal mantle woven by the Act and Regulations. *See Herpich v. Wallace*, 5 Cir., 1970, 430 F.2d 792; *Birnbaum v. Newport Steel Corp.*, 2 Cir., 1952, 193 F.2d 461, *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356.

We agree with the District Court that the Act itself settles the issue. Section 3(a) of the Act provides the following definitions:

"(13) The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire.

(14) The terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of."

15 U.S.C.A. § 78c(a). The heart of the alleged scheme was the defendants' refusal to honor the contracts to purchase plaintiff's stock. Even though he has not yet actually sold his stock, plaintiff is clearly a "seller" under these definitional provisions of the Act.[4]

Our decision is bolstered by a Second Circuit case, *Mutual Shares Corp. v. Genesco, Inc.*, 2 Cir., 1967, 384 F.2d 540. In *Genesco*, the complaint alleged that the parties in control purposely kept the price of the shares of the company involved artificially low by holding dividends at a minimum level and by lending funds at inadequate rates to the controlling shareholder (Genesco, Inc.) and that such scheme was undertaken to force a sale to the defendant at an inadequate price—a situation similar to our case. The *Genesco* Court stated:

"Controlling stockholders have a duty not to take advantage of the minority in purchasing the latter's shares. See *Speed v. Transamerica Corp.*, 99 F.Supp. 808, 828–829 (D.Del.1951). In *Cochran v. Channing Corp.*, 211 F.Supp. 239 (S.D.N.Y.1962), it was held that manipulation of market price and purposeful reduction of dividends in order to buy out minority stockholders cheaply was actionable under Rule 10b–5, at least under subdivisions (1) and (3) thereof. * * * But we do

---

**4.** The Supreme Court recently discussed these definitional provisions in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). It recognized that:

"A contract to purchase or sell securities is expressly defined by § 3(a) of the 1934 Act, 15 U.S.C. § 78c(a), as a purchase or sale of securities for the purposes of that Act. Unlike respondent, who had no contractual right or duty to purchase Blue Chip's securities, the holders of puts, calls, options and other contractual rights or

duties to purchase or sell securities have been recognized as 'purchasers' or 'sellers' of securities for purposes of Rule 10b–5, not because of a judicial conclusion that they were similarly situated to 'purchasers' or 'sellers,' but because the definitional provisions of the 1934 Act themselves grant them such a status."

421 U.S. at 750, 95 S.Ct. at 1932–33, 44 L.Ed.2d at 557 (footnotes omitted). *See also Smallwood v. Pearl Brewing Co.*, 5 Cir., 1974, 489 F.2d 579, 592.

not regard the fact that plaintiffs have not sold their stock as controlling on the claim for injunctive relief. The complaint alleges a manipulative scheme which is still continuing."

384 F.2d at 546. *See also O'Neill v. Maytag,* 2 Cir., 1964, 339 F.2d 764, 768; *Sargent v. Genesco, Inc.,* 5 Cir., 1974, 492 F.2d 750, 760; *Herpich v. Wallace,* 5 Cir., 1970, 430 F.2d 792; *Hoover v. Allen,* S.D. N.Y., 1965, 241 F.Supp. 213, 227.

We approve this approach taken by the Second Circuit with regard to injunctive relief. The element of specificity that accompanies a strict insistence on a purchase or sale, which is easily documented both qualitatively and quantitatively, is not as critical in a suit for injunctive relief as it is where damages are sought. In our case, plaintiff seeks only equitable relief against the alleged on-going scheme to defraud him.

Even though the alleged scheme did not arise until after the contracts to sell had been entered, we agree with the District Court that it is still "in connection with the sale." Payment has not yet been made pursuant to the contracts and the purpose of the scheme is to reduce the amount of that payment. The alleged scheme sufficiently "touches" the contracts to sell plaintiff's securities to be "in connection with" a sale. *See Superintendent of Insurance v. Bankers Life and Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128, 134 (1971).

We again caution, as we have many times before,[5] that this ruling on the sufficiency of the complaint is not a forecast of what will be the outcome of the case. "Once the matter gets beyond what the lawyers in legalese say the facts are and the Court sees what the real facts are, it may well wash out on summary judgment, . . . or if not then, then later on motion for directed verdict after the plaintiff's or all of the

evidence is in." *Tyler v. Peel Corp.,* 5 Cir., 1967, *supra.*

Affirmed.

---

5. *Ingalls Iron Works Co. v. Fruehauf Corp.,* 5 Cir., 1975, 518 F.2d 966, 969–70; *Smith v. St. Paul Fire & Marine Ins.,* 5 Cir., 1973, 471 F.2d 840, 842–43; *Tyler v. Peel Corp.,* 5 Cir., 1967, 371 F.2d 788, 792; *Carss v. Outboard Marine Corp.,* 5 Cir., 1958, 252 F.2d 690, 693.