**Jay B. LANGNER, Plaintiff,**

v.

**Stephen L. BROWN, S.L. Brown & Company, Inc., Carl D. Glicman, Jeffrey J. Steiner, Irving Levine, Jonathan A. Marshall, John Greenbaum, and the Franklin Holding Company, Defendant.**

**No. 95 Civ. 1981 (LBS).**

United States District Court,
S.D. New York.

Jan. 30, 1996.

262

Lowey, Dannenberg, Bemporad & Sellinger, P.C., New York City, for Plaintiff; Richard Dannenberg, of counsel.

Weil, Gotshal & Manges, New York City, for Defendant other than Franklin Holding; Dennis Block, of counsel.

Donovan Leisure Newton & Irvine, New York City, for Defendant Franklin Holding Corporation; James Stengel, of counsel.

SAND, District Judge.

This action arises out of Plaintiff Jay Langner's contention that Franklin Holding Corporation is being operated in the interest of its officers, directors and controlling shareholders to the detriment of the company and all the other shareholders. In his complaint, plaintiff seeks to enjoin defendants' alleged violations of both the Investment Company Act of 1940 ("the 1940 Act"), 15 U.S.C. §§ 80a–1 et seq., and the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. §§ 78a et seq., and seeks equitable relief under New York common law. In response to plaintiff's allegations, defendants move for an order dismissing the Amended Complaint on the grounds of, *inter alia*, lack of standing, failure to state a claim upon which relief can be granted, failure to plead with the requisite particularity, and failure to make demand upon the Board of Directors as to purported derivative claims. The Court grants defendants' motion in part and denies it in part.

## BACKGROUND

Franklin Holding Corporation ("FKL") is a publicly-owned non-diversified, closed-end investment company. Organized in 1987 under the laws of Delaware, FKL is registered to do business in the state of New York and is listed on the American Stock Exchange. The outstanding common shares of FKL are held by approximately 800 shareholders of record. Of those 800, more than 50% own odd lots of less than 100 shares. Of the 842,198 common shares outstanding, plaintiff Jay Langner is the record holder of 5351 common shares. Members of his family own additional shares which with plaintiff's holdings aggregate 38,727 shares. Prior to June 28, 1990, plaintiff served on FKL's Board of Directors. On that date, Langner was not renominated to continue as a director.

FKL's board is now composed of six directors. Defendant Stephen Brown ("Brown") has been Chairman and Chief Executive Officer of FKL since October 1986. As of June 30, 1995, Brown was the beneficial owner of 31.1% or 262,145 shares of common stock of FKL, which include 250,000 shares owned by defendant SLB. SLB is a private investment firm in which Brown is a controlling shareholder, owning or controlling by agreement more than 70% of its shares. For over seven years, SLB has allegedly shared office space with FKL, using its facilities, telephone number and sharing the same personnel without obligation or expense on the part of SLB.

FKL's five other defendant directors include Carl Glickman ("Glickman"), Irving Levine ("Levine"), Jonathan Marshall ("Marshall"), Jeffrey Steiner ("Steiner"), and John Greenbaum ("Greenbaum").[1]

*Glickman*

---

1. Carl Glickman owns 4,753 shares or .05% of FKL. Jeffrey Steiner owns 12,000 shares or 1.4%. Irving Levine owns 5,232 shares or .06%. Jonathan Marshall owns 4,500 shares or .05%. John Greenbaum owns 4,600 shares or .05%.

Since 1988, Carl Glickman has been a paid consultant of FKL and since 1990 he has received payments as both a consultant and a director. These payments have ranged from $48,000 to $54,000 per year. In addition to his FKL director duties, Glickman also serves as a director on Brown's SLB and The Bear Stearns Companies. Bear Stearns has acted as a broker-dealer for FKL for approximately seven years, executing some 50% to 80% of FKL's brokerage transactions.

*Levine*

Defendant Levine has served as a director of FKL since March 1990 garnering annual director fees of between $12,000 to $18,000. Levine's primary business affiliation is with the Copley Fund and Copley Financial Services of which he is founder, president and treasurer. As Levine serves on FKL's Board, so too does Brown serve on Levine's Copley Board.

*Marshall*

Defendant Marshall has served as a director of FKL since 1987 and as a member of its Compensation Committee, Audit Committee, and Executive Committee. For his services, Marshall has been paid annual director fees of $12,000 to $18,000 per year from 1991 through 1994.

*Steiner*

Likewise, defendant Steiner has garnered similar director fees since accepting a seat on the Board in 1987. Steiner's ownership stake in FKL totals 1.4%. In addition, Steiner also owns 11.7% of Brown's SLB and serves as a director on the Board of co-defendant and co-director Levine's Copley Financial Services Board.

*Greenbaum*

Defendant Greenbaum was Vice President of both FKL and Brown's SLB from March 1988 to September 1994. In addition to his duties as a officer, he served as a director of FKL from 1992 to 1994, earning annual pay between $72,225 and $105,133. At FKL's annual shareholders meeting on August 16, 1994, Greenbaum was not renominated as a director and therefore stepped down from the Board of FKL. However, two months later, on October 13, 1994, he was re-appointed as a sixth director.

Plaintiff Langner asserts that Brown has assured through stock ownership that only his close friends and business associates be placed on the Board. In addition to this claim, plaintiff asserts that for the six years from 1989 through 1994, the individual defendants have caused FKL to report total net investment losses in excess of $5.1 million while defendant Brown has received in excess of $1.9 million in compensation and all executive officers received in excess of $3.8 million in compensation.

In addition to these claims, plaintiff's complaint details a 65% drop in investment income, a 300% increase in investment losses, an inability to successfully deregister as an investment company and acquire operating companies over a six year period, self-dealing art transactions, payment of excessive compensation and professional fees, and overstating the value of a principal asset.

In response to plaintiff's allegations, defendants move for an order dismissing the Amended Complaint on the grounds of, *inter alia*, lack of standing, failure to state a claim upon which relief can be granted, failure to plead with the requisite particularity, and failure to make demand upon the Board of Directors as to purported derivative claims. We address each contention.

## DISCUSSION

### I. FAILURE TO MAKE A DEMAND

Unlike a claim brought by a plaintiff on his own behalf to enforce a right he personally possesses, a derivative claim is brought on behalf of a corporation to remedy an injury suffered by a corporation. It is, therefore, the corporation and not the shareholder plaintiff who is the real plaintiff. *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970).

Since claims asserted in a shareholder derivative suit belong to the corporation, it is incumbent upon the shareholder plaintiff to make a demand upon the corporation's board of directors prior to commencing the action. This requirement stems from the

well-settled principle that directors, rather than shareholders, manage the affairs of the corporation and the decision to bring or not to bring a law suit on behalf of a corporation is a decision concerning the management of the corporation. *Spiegel v. Buntrock*, 571 A.2d 767, 772–73 (Del.1990). Therefore, a motion to dismiss for failure to make a demand "is not intended to test the legal sufficiency of the plaintiff's substantive claim. Rather its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *Levine v. Smith*, 16 Del.J.Corp.L. 333, 345, 1989 WL 150784 (Del.Ch.1989), aff'd 591 A.2d 194 (Del.1991).

■ As FKL is a Delaware corporation, Delaware law governs the demand requirement. *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Under Delaware law, the demand requirement is predicated upon the presumption that directors manage the corporation with the good faith belief that their actions are in the best interest of the company. Demand is excused only when the facts cast doubt on this presumption such that the conduct at issue was not approved by "a majority consisting of the disinterested directors." *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984).

■ In determining the sufficiency of a demand futility claim,

"the trial court is confronted with two related but distinct questions: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." *Levine* 591 A.2d at 205; *see also Blasband v. Rales*, 971 F.2d 1034, 1048 (3rd Cir. 1992); *Aronson*, 473 A.2d at 814–815.

■ Mere director approval of a transaction, without particularized facts establishing

a breach of fiduciary duty claim or a lack of independence or disinterestedness of a majority of the directors, is insufficient to excuse demand. *Aronson*, 473 A.2d at 817. Indeed, if mere director approval were enough to excuse demand, demand would be futile in almost every case. The futility exception to the demand requirement would devour the rule. Therefore, the burden is on the plaintiff to show particularized facts demonstrating a reasonable doubt of business judgment protection. *Grobow v. Perot*, 539 A.2d 180 (Del.1988); *Heineman v. Datapoint Corp.*, 611 A.2d 950 (Del.1992). It is only when the alleged facts, considered as true, would demonstrate that "a majority of the directors who would have received the demand letter are 'interested' in the challenged transaction or 'lack independence' because of domination by an interested party or otherwise, that demand will be excused." *Steiner v. Meyerson*, Del.Ch., Civil Action No. 13139, Allen, C., 1995 WL 441999 (July 18, 1995).

Plaintiffs argue that demand is futile given the nature and extent of relationships between the six directors. Asserting that Brown is interested by virtue of his position as Chairman and Chief Executive Officer of FKL; Glickman is interested by virtue of his receipt of consultant and director fees for FKL, SLB and Bear Stearns; Greenbaum is interested because he is beholden to Brown as a former long-term employee and recently nominated director of FKL; Levine is interested by virtue of the fact that he is a director of Brown's company and Brown is director of his company; Marshall is interested through his service on the compensation, audit and executive committees of FKL; and Steiner is interested due to his 11.7% ownership stake in Brown's SLB, plaintiffs assert that demand should be excused.

■ Under the first prong of *Aronson*, plaintiff must allege with particularity that a majority of the "directors were dominated or otherwise controlled by an individual or entity interested in the transaction." *Grobow*, 539 A.2d at 189.[2] Under the second prong of

---

**2.** As explained in *Aronson*, "independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." 473 A.2d at 816. "To establish lack of independence, [plaintiff] must show that the directors

*Aronson,* plaintiff has the burden of supplying facts which if considered true would show that the directors failed to fulfill "their duty of procedural due care, by becoming fully informed, and their duty of substantive due care, by not engaging in, e.g., a waste of corporate assets." *Decker v. Clausen,* 15 Del.J.Corp.L. 1022, 1028–29, 1989 WL 133617 (Del.Ch. Nov. 6, 1989). Plaintiffs have failed to satisfy these tests. It is well-settled that the receipt of directors' fees does not constitute a disqualifying interest for the purposes of the demand requirement. *Grobow,* 539 A.2d at 189 (citing *Aronson,* 473 A.2d at 815–16). However, even if directors fees did comprise such an interest, there is no pleading that a majority of the directors are beholden to Brown for their livelihoods or a material portion of their incomes. To the contrary, the documents establish that directors fees totaled between $12,000 and $18,000 per year. Furthermore, documents detail that most defendant directors hold significant positions in other companies.

Just as the mere receipt of director fees does not constitute a disqualifying interest as a matter of law, so too are cross-directorships insufficient to create interest. The fact that several director defendants sat on the same boards of directors of other companies does not in itself establish lack of independence. *Citron v. Daniell,* 796 F.Supp. 649 (D.Conn.1992). It therefore becomes apparent that for the purposes of demand, defendants Levine, Marshall, and Steiner cannot be considered interested.

It is similarly apparent that plaintiffs allegations concerning the interest of director Greenbaum are insufficient. Plaintiffs assert that Greenbaum had been employed with FKL and had served as a director of SLB for seven years. However, there are no facts pled that Greenbaum is now an employee of FKL or that he is any other way dependent upon Brown. Plaintiff asserts that Greenbaum was not renominated for the August 1994 shareholders meeting, but was "subse-

quently placed back on the Board thereafter (presumably by Brown)." (Pl.Ans.Brief, p. 92). Mere allegations without particularized facts are insufficient to demonstrate that Brown placed Greenbaum on the Board or that Greenbaum was beholden to Brown for the directorship.

In light of the foregoing, plaintiffs have failed to satisfy either prong of the *Aronson* test. Therefore the derivative claims are dismissed for failure to make a pre-litigation demand on FKL's board of directors.

## II. Failure to State a Claim upon which Relief may be Granted and Failure to Plead with Particularity

■ Having dismissed plaintiff's derivative claims, defendant asserts that plaintiff's private claims must be dismissed as well. Arguing that plaintiff has failed to state a claim upon which relief may be granted, defendant urges dismissal of plaintiff's § 36(b) claim, § 10(a) claim, and § 17(a) and (d) claims. It is well settled law that a court determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) should read the underlying complaint with "great generosity". *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 558 (2d Cir.1985), citing *Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957). The cause of action may not be dismissed "unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985), quoting *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102; *Vista Co. v. Columbia Pictures Industries,* 725 F.Supp. 1286, 1289 (S.D.N.Y.1989). Given that standard, this court finds that plaintiff has plead facts sufficient to rebut a 12(b)(6) motion.

### A. Section 36(b) of the 1940 Investment Company Act

Section 36(b) provides an express private right of action to a shareholder to recover

are "beholden" to [an interested party] or so under their influence that their discretion would be sterilized. *Rales v. Blasband,* 634 A.2d 927, 936 (Del.1993); *see also Kaplan v. Centex Corp.,* 284 A.2d 119, 123 (Del.Ch.1971) (plaintiff charging domination or control of one or more di-

rectors must allege particularized facts manifesting "a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling").

unreasonable or excessive compensation. Unlike other counts enumerated in the complaint, no pre-suit demand is required. Rather, the action may be brought against any officer or director whose receipt of compensation may be so excessive as to constitute a breach of fiduciary duty.

█ In assessing a 36(b) claim, it was intended by Congress that the Court "look at all the facts in connection with the determination and receipt of such compensation ... in order to reach a decision as to whether the advisor has properly acted as a fiduciary in relation to such compensation." *Gartenberg v. Merrill Lynch Asset Management,* 694 F.2d 923 (2d Cir.1982) *citing* S.Rep. No. 91–184 (1970) U.S.Code, Congress Act News at 4910. A variety of factual inquiries must be had, including but not limited to, the nature and quality of the service rendered, the payout in relation to revenue, and the payout in relation to shareholder value including stock price and debt to equity ratios.

█ Asserting a § 36(b) claim for excessive compensation, plaintiff alleges that 60% of FKL's gross investment income was paid out to directors and officers over a five year period of declining returns and poor management. Further buttressing his claim, plaintiff contends that in 1994, defendant Brown and four other directors were paid $961,000 even though revenues were only $709,000. In light of the fact that no discovery on the factual matters of the 36(b) claim has been had, resolution of this factual dispute on a motion to dismiss would be premature and unwarranted. *Meyer v. Oppenheimer Management Corp.,* 764 F.2d 76, 83 (2d Cir.1985) ("in deciding whether a fee is so high as to constitute a breach of fiduciary duty, a court should examine all the facts surrounding a fee determination. Whether or not appellant prevails on this claim, ... he has stated a claim on which relief can be granted and on which he is at least entitled to discovery.") Therefore, the court concludes, that plaintiff's § 36(b) claim survives defendant's 12(b)(6) motion to dismiss.

**B. § 10(a) of the 1940 Investment Company Act**

█ In addition to plaintiff's § 36(b) claim, plaintiff has plead facts sufficient to state a § 10 claim. Section 10(a) provides that "no registered investment company shall have a board of directors more than 60 percentum of the members of which are persons who are interested persons of such registered company." As discussed *supra,* plaintiff raises several instances of potential director interest. In light of the fact that this is a 12(b)(6) motion to dismiss, it would be inappropriate to curtail the § 10 claim before plaintiff has had the chance to further develop his allegations.

Defendants argue that leniency is unwarranted given their assertion that, as a matter of law, no private right of action is implied under § 10. This court disagrees; a private right of action may be implied under § 10.

It is well settled that federal courts faced with the issue of whether a federal statute implies a private right of action should consider congressional intent of paramount importance. *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Although the first version of the 1940 Act lacked an explicit private right of action, most courts implied a private remedy.[3] Throughout the years, federal courts have interpreted the 1940 Act to afford a private right of action for injuries suffered from its violation to the class of persons whose interest the act was designed to protect. The Fifth Circuit interpreted Congress' intent when it stated, "the history and whole pattern of the Investment Company Act convince us that Congress by this statute intended to deter mismanagement of investment companies for the protection of investment company security holders." *Herpich v. Wallace,* 430 F.2d 792, 815–16 (5th Cir.1970).

**3.** *See also, Esplin v. Hirschi,* 402 F.2d 94, 103 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Levitt v. Johnson,* 334 F.2d 815, 819 (1st Cir.1964); *Taussig v. Wellington Fund,* 313 F.2d 472, 476 (3d Cir1962), *cert. denied,* 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963); *Goodall v. Columbia Ventures,* 374 F.Supp. 1324, 1328 (S.D.N.Y.1974); *Brown v. Bullock,* 194 F.Supp. 207, 245 (S.D.N.Y.), *aff'd,* 294 F.2d 415 (2d Cir. *en banc* 1961).

In 1970, Congress amended the 1940 Act to add § 36(b), discussed *supra*, which expressly created a private right of action permitting recovery of unreasonable or excessive compensation. Though the defendants argue that an express private right in one section negates an implied private right others, the courts in this circuit have unanimously held that the enactment of the 1970 amendment does not preclude implying private rights of action under other sections of the 1940 Act. Judge Friendly, in *Fogel v. Chestnutt*, wrote "although we do not find it necessary to decide the point, we do not think § 36(b) was intended to negate implied causes of action which the courts have found under sections of the Act other than § 36. Indeed, we are already on record to this effect. See *Tannenbaum v. Zeller, supra*, 552 F.2d [402] at 417 [ (2nd Cir.1977) ]." 668 F.2d 100 (2d Cir.1981).[4] Relying on *Fogel*, six years later the Third Circuit held that the inclusion of § 36(b)'s explicit private right of action "in no way suggests a congressional intent to abolish established implied causes of action." *Bancroft Convertible Fund v. Zico Investment Holdings*, 825 F.2d 731, 735 (3d Cir.1987).

In 1980 Congress again amended the Investment Company Act. (Pub.L. No. 96–477, 94 Stat. 2275 (1980)). The House Report on Pub.L. No. 96–477 states:

> The rationale for implying private rights of action under the securities laws beyond those actions expressly provided for had been well articulated by the Supreme Court when it observed that implied private rights of action allowing shareholders to sue to remedy their losses would significantly assist the congressional goal of promoting fair corporate suffrage. But in recent years, the Supreme Court turned its focus toward a strict construction of statutory language and expressed intent. The Committee wishes to make plain that it expects the courts to imply private rights of action under this legislation, where the plaintiff falls within the class of persons protected by the statutory provi-

sion in question. Such a right would be consistent with and further Congress' intent in enacting that provision, and where such actions would not improperly occupy an area traditionally the concern of state law." (quoted from *In re ML–Lee*, 848 F.Supp. 527 (D.Del.1994).

The question must then become whether plaintiff is within the class of persons protected by § 10. In enacting the 1940 Act, Congress declared its purpose in Section 1. The Act was promulgated to protect shareholders of registered investment companies from abuses by management or controlling shareholders. Plaintiff Langner is a minority shareholder who asserts that the defendants through stock ownership, common voting interests, and an excessive number of interested directors have used the resources of the company to benefit themselves to the detriment of the company and the shareholders. Relying on allegations supported by facts, plaintiff asserts, *inter alia*, unlawful actions in the form of unreasonable compensation (payouts of $961,000 in years where revenue totaled $709,000), misrepresentation of reported net asset values, and overreaching transactions between FKL and its affiliate persons and companies (including art work and radio stations). Plaintiff, therefore, falls within the class of persons the statute was designed to protect. Therefore, plaintiff's § 10(a) claim survives the 12(b)(6) motion.

## C. § 17 of the Investment Company Act of 1940

■ Relying on the analysis set forth *supra*, plaintiff's § 17 claim must be sustained as against a motion to dismiss. Section 17(a) prohibits any sale or purchase between an investment company and an affiliate of such company. The statute makes it unlawful for any affiliated person of a registered investment company to knowingly purchase or sell any property to the company or any company controlled by the registered company without prior assent by the SEC.

---

4. See also, *Krome v. Merrill Lynch & Co.*, 637 F.Supp. 910, 918–19 (S.D.N.Y.1986) (implying private right of action for violations of Sections 10(b), 15, 17 and 34 of the 1940 Act); *Krinsk v.*

*Fund Asset Management, Inc.*, 654 F.Supp. 1227, 1231 (S.D.N.Y.1987) *cert. denied*, 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989) (sustaining implied right of action under Section 20(a)).

The intention of § 17 was to allow the SEC to serve as a gatekeeper warding off those transactions that involve overreaching. Similarly, § 17(d) of the 1940 Act makes it unlawful for an affiliate of a registered company or an affiliate of that affiliate to enter into a joint venture with the company or a company controlled by the investment company without prior approval of the SEC.

Plaintiff contends that a transaction concerning the sale of several radio stations was in fact a purchase by FKL of certain assets of FKL's affiliates. Plaintiff argues that FKL, together with another entity acquired joint interests in six radio stations and a radio network. Ownership was held by FKL through its wholly owned subsidiary, Excelsior, in a limited partnership (FCP) whose general partner was Wesham. According to plaintiff, FKL represented that it controlled the operations of the radio stations, that FCP was a majority owned subsidiary of FKL and that FCP and Wesham were controlled affiliates of FKL. In the summer of 1994, the partnership was dissolved and FKL received one station. This leads the plaintiff to assert that the dissolution of FCP was in fact a purchase by FKL through its wholly owned subsidiary, Excelsior, of certain assets from FCP and Wesham. This purchase took place without prior SEC approval. Plaintiff's § 17(d) claims center around his assertion that FKL, Excelsior and Wesham were in joint operation of FCP's radio stations without prior approval by the SEC. In addition to these claims, plaintiff asserts a general violation of § 17 due to a sale (since rescinded) from Brown to FKL of his personal art work for $87,000.

In order to succeed on his claim, plaintiff must prove that the radio station transaction was in fact a purchase and not a dissolution and that no exemptions would apply to such a purchase. Similarly, plaintiff must prove that Franklin, Wesham and Excelsior were engaged in a joint operation of the stations. However, plaintiff has met his burden in refuting a 12(b)(6) claim to the extent that discovery must be had to allow plaintiff to further develop his allegations. As the First Circuit stated, in a case sanctioning a private right of action under § 17 of the 1940 Investment Company Act, plaintiff "is entitled to his day in court to prove exactly that." *Lessler v. Little,* 857 F.2d 866 (1st Cir.1988).[5]

## D. § 20 of the Investment Company Act of 1940

Section 20(a) of the 1940 Act makes it unlawful "to solicit any proxy in respect of a security issued by a registered investment company ... in contravention of the rules and regulations prescribed by the SEC." The SEC rules relating to § 20(a) provide that all SEC rules adopted pursuant to § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n, apply to solicitations made by investment companies. 17 C.F.R. § 270.20a–1(a). Rule 14(a) guards against the solicitation of proxy materials containing material omissions or misrepresentations.

FKL's proxy solicitations concerned matters involving the 1993 and 1994 Board of Directors election as well as a proposal that would terminate FKL's status as an investment company in favor of that of an operating company. Plaintiff cites five omissions in the proxy which allegedly violate § 20: (1) FKL had directors of which more than 60% were interested, (2) FKL and SLB shared office space and personnel, (3) the terms of Brown's new employment contract, (4) the close business relationships among Brown, Glickman, Steiner, and Levine, and (5) all similar facts from which shareholders could reasonably conclude that FKL was being managed and operated for the benefit of Brown and SLB.

The Supreme Court in *TSC Industries v. Northway, Inc.,* warned against deciding on summary judgment the issue of whether an omission or misrepresentation is material. Only if the established omissions are "so obviously important to an investor that reasonable minds cannot differ on the question of materiality" should the ultimate issue of materiality be resolved as a matter of law by summary judgment. 426 U.S. 438, 450, 96

---

**5.** *See also, Krome v. Merrill Lynch,* 637 F.Supp. 910 (S.D.N.Y.1986) (implied private right of action under § 17(a)).

S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976). In the case at hand, the Court is asked to decide a 12(b)(6) motion, rather than one for summary judgment. While this court agrees with defendant that it need not engage in "self-flagellation," omissions concerning shared office space and personnel as well as the disclosure of relationship information may be material and plaintiff should be allowed the opportunity to further develop his § 20 allegations.

### III. Lack of Standing

■ Plaintiff seeks injunctive relief under § 10(b) which bars fraud in connection with the purchase or sale of any security. Defendants move to dismiss the claim for lack of standing based upon plaintiffs failure to allege that he purchased or sold any FKL stock in reliance on material misrepresentations or omissions. Defendants motion is denied in light of well-established Second Circuit precedent holding that, in seeking injunctive relief under a § 10(b) claim, a plaintiff does not have to show damages in connection with the purchase or sale of any security. *Mutual Shares Corp. v. Genesco, Inc.*, 384 F.2d 540 (2d Cir.1967); *see also, Packer v. Yampol*, 630 F.Supp. 1237 (S.D.N.Y.1986).[6]

As enunciated by this court in *Fuchs v. Swanton Corp.*, 482 F.Supp. 83, 90 (S.D.N.Y. 1979), the plaintiff requesting injunctive relief must demonstrate "that the continuation of past and present practices will in fact injure him." Plaintiff alleges a failure to disclose in its 1994 Annual Report: (1) the facts upon which the directors' $8.3 million valuation of Excelsior/WRKA is based, (2) that SLB shares office space and personnel with FKL without payment, (3) that professional fees were falsely described, and (4) that income from controlled affiliates results from a management agreement entered into between Excelsior and FKL.

■ Addressing the first contention, the SEC has stated that misleading disclosures involving the valuation of assets implicate § 10(b). SEC Accounting Series Release No. 113, Investment Company Act Release No. 5847 [1937–1982 Transfer Binder Accounting Series Releases] Fed.Sec.L.Rep. (CCH) ¶ 72,135 at 62, 288. In the 1994 annual report, FKL valued WRKA and Excelsior at $8,361,440. This figure represented a 91% increase over the reported cost of the station in August 1994 ($4,386,000). Given that WRKA represents more than 50% of the total assets of FKL, the omission may be material. This is especially true in light of the fact that defendants used the appreciation of WRKA as the basis of their claim that net asset value has increased over the past four years. Similarly, allegations that WRKA's operating income of $800,000 is insufficient to provide FKL with a profit further buttresses plaintiff's § 10(b) claim that FKL's past and present valuation practices may in fact injure the plaintiff. In light of the foregoing, plaintiff's § 10(b) claim survives the 12(b)(6) motion.

### IV. DISSOLUTION

■ This court abstains from exercising jurisdiction over plaintiff's dissolution claim for a variety of reasons. First, a dissolution claim for a Delaware corporation is governed by Delaware law. Second, the Delaware statute governing dissolution, Subchapter X of the Delaware General Corporation Law, specifically delegates jurisdiction over dissolution claims to the Delaware Court of Chancery. Third, even if the federal court had jurisdiction over dissolution claims, Second Circuit law dictates that abstention is an appropriate course of action.

It is well established that as a matter of law, corporate governance issues are normally controlled by the law of the state of incorporation. *Kamen v. Kemper*, 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). Given this rule, as FKL is a Delaware corporation, Delaware law should apply. Yet, plaintiff challenges the state of incorporation approach. Rather, plaintiff asserts that a "grouping of contacts" approach should ap-

---

6. This rule of standing is not particular to the Second Circuit, Indeed, it has been followed in other circuits as well. The Fifth Circuit held that "the element of specificity that accompanies a strict insistence on a purchase or sale ... is not critical in a suit for injunctive relief as it is where damages are sought." *Davis v. Davis*, 526 F.2d 1286, 1290 (5th Cir.1976).

ply. Arguing that FKL's principal place of business is in New York and its books and records are in New York, plaintiff seeks the dissolution of FKL under the common law and corporate law of New York. However, there is ample law stating that the law of the state of incorporation applies.[7] As FKL is a Delaware corporation, Delaware law controls.

An investigation of Delaware law reveals that the state has statutorily codified its strong interest in the systematic creation and dissolution of its companies. The statute concerning dissolution, Subchapter X of the Delaware General Corporation Law, specifically ascribes jurisdiction over dissolution claims to the Delaware Court of Chancery. This delegation of jurisdiction to one tribunal is meant to ensure the uniform application and development of regulatory laws.

In light of this well-proscribed administrative plan, the Court believes that abstention over plaintiff's dissolution claim avoids needless interference with Delaware's regulatory scheme. The Second Circuit held in *Friedman v. Revenue Management of New York*, 38 F.3d 668, 671 (2d Cir.1994), that "every federal court that has addressed the issue of dissolving state corporations has either abstained or noted that abstention would be appropriate, assuming jurisdiction exists." In *Friedman*, the court abstained from hearing a claim for dissolution of a New York corporation; in this case, the court is asked to entertain a dissolution claim of a Delaware corporation. Thus even if this federal court had jurisdiction over the dissolution claim, Second Circuit law dictates that abstention is an appropriate course of action. As the Northern District of New York found in *Harrison v. CBCH Realty*, it is "difficult to conceive of an issue more important to the state than the continuation or dissolution of a corporation that was created and exists through the operation of its laws." 1992 WL 205839, at *4 (N.D.N.Y.1992). *Cuddle Wit, Inc. v. Chan*, 1990 WL 115620, at *2

(S.D.N.Y.1990). Accordingly, we abstain from reviewing the dissolution claim.

In summation, the Court grants defendants' motion to dismiss in part and denies in part. Plaintiff's derivative claims are dismissed for failure to make demand. However, plaintiff's claims under the 1940 Investment Company Act survive the 12(b)(6) motion to dismiss. Finally, the Court abstains from entertaining plaintiff's dissolution claim.

SO ORDERED.

---

7. *See, Hart v. General Motors Corp.*, 129 A.D.2d 179, 517 N.Y.S.2d 490 (1st Dept.1987) (Delaware law applied to derivative claims against directors of Delaware corporation, notwithstanding extensive New York contacts; action dismissed on *forum non conveniens* grounds, with leave to refile in Delaware); *McDermott, Inc. v. Lewis*, 531 A.2d 206, 214–218 (Del.1987) (internal affairs doctrine "requires that the law of the state of incorporation should determine issues relating to internal corporate affairs").