HALPERT ENTERPRISES, INC., derivatively on behalf of nominal defendant J.P. Morgan Chase & Co., Plaintiff,

v.

William B. HARRISON, Jr., Hans W. Becherer, Riley P. Bechtel, Frank A. Bennack, Jr., Lawrence A. Bossidy, M. Anthony Burns, H. Laurance Fuller, Ellen V. Futter, William H. Gray, III, Helene L. Kaplan, Lee R. Raymond, John R. Stafford, Lloyd D. Ward and Marina v.N. Whitman, Defendants,

and

J.P. Morgan Chase & Co., a Delaware Corporation, Nominal Defendant.

No. 02 Civ. 9501(SHS).

United States District Court,
S.D. New York.

March 28, 2005.

Leigh Laskey, Rifkind, LTD, New York City, for Halpert Enterprises.

Ahuva Genack, Mark E. Segall, J.P. Morgan Chase Legal Dept., New York City, for Defendants.

## OPINION & ORDER

STEIN, District Judge.

Halpert Enterprises, Inc. brings this shareholder derivative action against the directors of J.P. Morgan Chase & Co. for alleged breaches of fiduciary duties. Halpert contends that the Board of Directors of J.P. Morgan Chase & Co. engaged in misconduct in connection with that bank's transactions with Enron, the infamous, now-bankrupt, energy corporation. Specifically, plaintiff asserts that defendants: 1) violated Section 14(a) of the Securities Exchange Act by failing to disclose material liabilities in Securities and Exchange Commission filings; 2) breached their fiduciary duties by failing to supervise and monitor J.P. Morgan Chase & Co.'s operations and by failing to seek legal redress for harm to the company; 3) grossly mismanaged the bank; and 4) wasted the bank's assets.

The directors have now moved to dismiss the amended complaint or, in the alternative, to stay this action. They contend that Halpert has not pled with the requisite particularity that it would have been futile for Halpert to have made a demand on the J.P. Morgan Chase & Co. Board of Directors ("the Board") that J.P. Morgan Chase & Co. itself bring this action. In addition, they urge that plaintiff's

Section 14(a) claim is merely a garden-variety breach of fiduciary duty claim and is, in part, moot. Defendants also contend that, at a minimum, this Court should stay this action in deference to shareholder derivative litigation pending in the New York State courts. See Simon v. Becherer, 7 A.D.3d 66, 775 N.Y.S.2d 313 (1st Dep't 2004). Not surprisingly, Halpert replies that it has properly pled its claims and that a stay would be inappropriate, because this action contains a securities law claim over which only federal courts have jurisdiction. As set forth below, defendants' motion to dismiss the amended complaint is granted because plaintiff has failed to allege with the required particularity that it would have been futile for plaintiff to have made a demand on the Board that J.P. Morgan Chase & Co. itself bring this litigation.

### I. BACKGROUND

The Verified Amended Shareholder Derivative Complaint ("Amended Complaint") in this action alleges that the defendant directors breached their fiduciary duties in connection with business dealings that occurred between J.P.Morgan Chase & Co. ("JPM Chase") and Enron. Essentially, plaintiff contends that JPM Chase manufactured and participated in fraudulent transactions that were designed to help Enron disguise funds obtained through loans as legitimate revenue from trading operations. The transactions at issue in this action have been the source of other litigations. Certain of those transactions are described in this Court's March 28, 2005 Opinion & Order in In re: JP Morgan Chase Securities Litigation, 02 Civ 1282, to which the reader is referred for an understanding of the underlying events.

In this litigation, Halpert seeks to hold the individual members of the Board liable for damage to the bank stemming from its

transactions with Enron. Plaintiff has not alleged that it made a demand on the Board that JPM Chase bring this action itself, but instead claims that any such demand would have been futile. Specifically, in paragraph 198 of the Amended Complaint, plaintiff alleges that it forewent making a demand because "such demand would be a futile and useless act .... [,]" since a majority of the Board lacks the requisite independence, disinterest and business judgment to evaluate the demand objectively. According to the Amended Complaint, the Board members face impending exposure to liability for causing false SEC filings (Am.Compl.¶¶ 198(a), (b), (d)) and for violating their duties of good faith, loyalty and due care (*see id.* ¶¶ 198(k), (*l*), (m), 201). To support these demand futility contentions, plaintiff alleges that the directors' knowledge of the Enron transactions can be "reasonably inferred" from the "widespread nature of the unlawful activity." (*Id.* ¶ 198(c)). Halpert also contends that certain defendants should have been aware of the scheme by virtue of their positions on supervisory board committees, such as the Audit Committee, the Governance Committee and the Risk Policy Committee. (*Id.* ¶¶ 198(e), (g), (h)).

In addition, plaintiff maintains that the defendants would not want to expose themselves or their fellow directors to liability, since they would allegedly not be covered by their directors' and officers' liability insurance if JPM Chase itself brought the action. (*Id.* ¶¶ 198(j), 199, 202). Halpert claims that the Board's reluctance is reflected in the antagonism defendants have shown to pursuing remedies for the corporation's injuries in connection with

these transactions. (*Id.* ¶¶ 198(i), 200). Plaintiff also contends that certain defendants would not want to sue each other because they sit on other boards of directors together. (*Id.* ¶ 198(n)). Moreover, the directors allegedly have an incentive to protect their compensation, which might prevent them from voting for a suit against the defendants who sit on the Board's compensation committee. (*Id.* ¶¶ 198(f), (*o*)).

## II. DISCUSSION

### A. Legal Standard

■ Plaintiff's claims are brought in derivative form on behalf of the corporation, JPM Chase, of which plaintiff is a shareholder. The Federal Rules of Civil Procedure prescribe special pleading requirements for shareholder derivative actions in Rule 23.1, which provides, among other directives, that "[t]he complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Rule 23.1 is meant to "filter unfounded claims[ ]" by excusing demand "only if the complaining stockholder, in his complaint, makes well pleaded allegations that demand on the corporation is futile." *Burghart v. Landau,* 821 F.Supp. 173, 179 (S.D.N.Y.1993).[1]

■ To comply with Fed.R.Civ.P. 23.1, a plaintiff must plead the futility of demand with specific factual allegations. *See Lewis v. Graves,* 701 F.2d 245, 250 (2d Cir.1983). A plaintiff may not simply rely

---

**1.** Although Delaware substantive law governs with respect to the futility of demand, the relevant procedural requirement is embodied in Fed.R.Civ.P. 23.1. The Court has construed defendants' motion as one to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for non-compliance with the particularity requirement of Fed.R.Civ.P. 23.1.

on conclusory allegations. *See Wall St. Sys., Inc. v. Lemence,* 04 Civ. 5299, 2005 WL 292744, at *2 (S.D.N.Y.2005). In considering a motion to dismiss for failure to satisfy the particularity requirement of Fed.R.Civ.P. 23.1, this Court accepts as true all well-pleaded allegations and all reasonable inferences drawn therefrom. *See Levner v. Saud,* 903 F.Supp. 452, 456 (S.D.N.Y.1994); *see also Rattner v. Bidzos,* No. Civ. A. 19700, 2003 WL 22284323, at *7 (Del.Ch. Sept. 30, 2003) (applying Del. Ch. R. 23.1).

*B. Analysis*

■ Fed.R.Civ.P. 23.1 outlines the procedural rules with which a derivative action in federal court must comply, but state law provides the substantive law governing demand requirements. In *RCM Sec. Fund, Inc. v. Stanton,* Judge Ralph Winter, writing for a unanimous panel of the U.S. Court of Appeals for the Second Circuit, held that "Rule 23.1 is a rule of pleading that creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question." 928 F.2d 1318, 1330 (1991). He went on to explain that "the adequacy of those efforts is to be determined by state law...." *Id.; see also Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108–09, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

■ The relevant substantive law on demands is that of the state where the corporation is incorporated. *See Kamen,* 500 U.S. at 108–09, 111 S.Ct. 1711. JPM Chase is incorporated in Delaware, and the parties concur that Delaware law applies in this regard. Delaware law requires that claims alleging mismanagement that has depressed the value of a corporation's stock be brought derivatively on behalf of the corporation rather than by a plaintiff in his personal capacity. *See Kramer v.*

*Western Pac. Indus.,* 546 A.2d 348, 353 (Del.1988). The decision to bring a lawsuit on behalf of a corporation is ordinarily at the discretion of a board of directors, because that body is charged with the management of the affairs of a corporation. *See* Del.Code. Ann. Tit. 8 § 141(a). Therefore, a plaintiff must make a demand of the board—unless to do so would be futile—before pursuing litigation in the name of the corporation. The Delaware Supreme Court has explained the rationale of that requirement as follows:

The demand requirement serves a salutary purpose. First, by requiring exhaustion of intracorporate remedies, the demand requirement invokes a species of alternative dispute resolution procedure which might avoid litigation altogether. Second, if litigation is beneficial, the corporation can control the proceedings. Third, if demand is excused or wrongfully refused, the stockholder will normally control the proceedings.

*Brehm v. Eisner,* 746 A.2d 244, 255 (Del. 2000) (quoting *Grimes v. Donald,* 673 A.2d 1207, 1216–17 (Del.1996) (footnotes omitted)). The demand rule is meant "to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs." *Elfenbein v. Gulf & Western Indus., Inc.,* 590 F.2d 445, 450 (2d Cir.1978) (per curiam).

■ As noted, a plaintiff need not make a demand of the board when it would be futile to do so. Delaware law excuses demand as futile "where a reasonable doubt exists that the board has the ability to exercise its managerial power, in relation to the decision to prosecute, within the strictures of its fiduciary obligations." *Heineman v. Datapoint Corp.,*

611 A.2d 950, 952 (Del.1992). Specifically, a court must determine whether "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis,* 473 A.2d 805, 812–13 (Del.1984), *rev'd on other grounds by Brehm,* 746 A.2d at 253–54 (applying the *Aronson* test *de novo* rather than with deference to the Chancery Court's determination). The *Aronson* test is disjunctive, offering alternative avenues for pleading that it would be futile to make a demand on the board that the corporation bring the action itself. *Levine v. Smith,* 591 A.2d 194, 206 (Del.1991).

■■■■■ To show that a reasonable doubt exists as to whether the directors are disinterested or independent, a plaintiff must "plead particularized facts demonstrating either a financial interest or an entrenchment on the part of the [ ] directors." *Grobow v. Perot,* 539 A.2d 180, 188 (Del.1988). A director is interested "whenever divided loyalties are present, or where the director stands to receive a personal benefit from the transaction not equally shared by the shareholders." *Blasband v. Rales,* 971 F.2d 1034, 1048 (3d Cir.1992). By contrast, a director is independent when his "decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson,* 473 A.2d at 816. A plaintiff does not adequately allege that the board is interested by showing a particular director had an interest in the transaction. Rather, a plaintiff must show that "through the pleadings of particularized facts, that a majority of the board have a financial interest in the transaction or are so dominated by the proponent of the transaction that their 'discretion is sterilize[d].' " *Andreae v.*

*Andreae,* Civ. A. No. 11905, 1992 WL 43924, at *4 (Del.Ch. March 30, 1992) (citations omitted) (bracketed text in original) (quoting *Zapata Corp. v. Maldonado,* 430 A.2d 779, 784 (Del.1981)).

■■■■ The second alternative available to plaintiffs alleging demand futility pursuant to the *Aronson* test is to plead particularized facts that "raise a reasonable doubt that the directors exercised proper business judgment in the transaction." *Grobow,* 539 A.2d at 189. Proper business judgment involves both a substantive element—related to the actual terms of the transaction—and a procedural element—related to making an informed decision. *Id.* Board members enjoy the benefit of the business judgment rule, a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company." *Aronson,* 473 A.2d at 812.

Several other shareholder derivative complaints that have been filed against the directors of corporations that did business with Enron have been dismissed for failure to plead the futility of demand with the requisite particularity. In *Simon v. Becherer,* the New York Appellate Division considered a derivative action against members of the JPM Chase Board that is substantially similar to the litigation at bar. 7 A.D.3d 66, 775 N.Y.S.2d 313 (1st Dep't 2004). That court granted a motion to dismiss the complaint for failure to plead with particularity as required by Del. Ch. R. 23.1, Delaware's equivalent to the Federal Rule of Civil Procedure bearing the same number, commenting:

> Examples of insufficient particularity are pervasive in plaintiffs' pleading. The allegation that Chase executives, unnamed, invested in and profited from the Enron LJM2 partnership does not

allege that any individual board members did so. The allegation that Chase's losses were the reckless result of either the individual board members' knowing approval of the Enron Forward Sale Contracts, or of the Board's sustained, systematic failure to establish an effective system of internal reporting and controls, is not supported by specific facts showing either that the board members approved of those transactions or the nature of the purported systematic failure to provide appropriate oversight. Plaintiffs' pleadings never state what the allegedly ignored "myriad red flags" were, other than the Sumitomo transactions and lawsuit, of which there is no allegation that the board members were aware, or what additional measures the board might have taken. Hence the complaint on its face fails to allege, in requisite detail, the substantial likelihood of the directors' liability.

*Id.* at 72–73, 775 N.Y.S.2d 313.

The complaints in other Enron-related derivative actions have similarly pled futility of demand inadequately. In *In re Citigroup Inc. Shareholders Litigation,* for example, the Delaware Chancery Court considered a conclusorily alleged complaint brought against the directors of Citigroup in connection with that bank's dealings with Enron. No. 19827, 2003 WL 21384599, at *1 (Del.Ch. June 5, 2003). Delaware Vice Chancellor Lamb dismissed the action for failure to comply with Del. Ch. R. 23.1, noting that in a "conclusory fashion, the complaints ... allege that the directors either knew about or should have known about the Enron transactions and either approved of those transactions or are liable for a 'sustained and systematic failure' to supervise the activities of their corporate subordinates." *In re Citigroup S'holders Litig.,* 2003 WL 21384599, at *1. In *Fink v. Komansky,* Judge Daniels of the Southern District of New York dis-

missed a similar action brought against the directors of Merrill Lynch, explaining that the complaint "does not lay out any specific facts demonstrating that the defendants were aware of the unlawful nature of Enron's conduct that would signal to the Board that Merrill Lynch should not do business with Enron." No. 03CV0388, 2004 WL 2813166, at *4 (Dec. 8, 2004).

■ Here, plaintiff's Amended Complaint suffers from the same shortcomings as the complaints in *Simon, In re Citigroup* and *Fink.* Plaintiff has failed to offer particular allegations that satisfy the *Aronson* test. Rather, the complaint contains merely conclusory allegations that do not raise a reasonable doubt as to the Board's independence and disinterestedness and its exercise of reasonable business judgment. Plaintiff alleges a scheme with which some employees at JPM Chase were familiar, but never, except with conclusory allegations, conveys that the scheme occurred with the Board's knowledge or systemic failure to engage in proper oversight.

Subsequent to the briefing on this motion to dismiss, the parties submitted letters to the Court regarding the Appellate Division's decision in *Simon.* Plaintiff argued that the Amended Complaint in this action is distinguishable from the *Simon* complaint, because it offers more information on the following subjects: the composition, duties and frequency of meetings of committees of the Board of Directors; the private placement memorandum of LJM2; knowledge on the part of specific JPM Chase employees that the Enron scheme was occurring; a statement of defendant Harrison that JPM Chase had "made mistakes"; the report of Neal Batson, an examiner appointed by the Bankruptcy Court in the Enron matter; and informa-

tion on settlements between JPM Chase and governmental entities. (*See* letter of Leigh R. Lasky to the Court, dated June 2, 2004). However, as with the other conclusory allegations in the complaint, none of the allegations that plaintiff's counsel cited gives rise to a particularized reasonable doubt that "(1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson,* 473 A.2d. at 812–13. In other words, plaintiff has failed to overcome the presumption of the business judgment rule.

Halpert has offered no specific allegations suggesting that the directors knew of the nature of JPM Chase's dealings with Enron, or that they disregarded "red flags" that should have put them on notice. *In re Citigroup Inc. S'holders Litig.,* 2003 WL 21384599, at *2; *see also Rattner v. Bidzos,* No. Civ.A 198700, 2003 WL 22284323, at *12 (Del.Ch. Oct.6, 2003). The Amended Complaint "does not plead with particularity what obvious danger signs were ignored or what additional measures the directors should have taken." *In re Baxter Intern., Inc. Shareholders Litig.,* 654 A.2d 1268, 1271 (Del.Ch.1995). As "the mere threat of personal liability ... is insufficient to challenge either the independence or disinterestedness of directors .... [,]" plaintiff must allege particular facts giving rise to "a substantial likelihood of director liability," a burden it has plainly failed to meet. *Aronson,* 473 A.2d at 815.

Plaintiff's allegations regarding the Board members' alleged conflicts of interest are vague, conclusory and insufficient. The allegations that several of the Board members sit together, in various configurations, on other boards do not call into question the ability of the board members to exercise proper business judgment. *See*

*Langner v. Brown,* 913 F.Supp. 260, 265 (S.D.N.Y.1996). The allegations that the Board members receive various fees from JPM Chase are similarly unavailing, because there are no particularized allegations indicating that that compensation is excessive. *See id.* That the insurance policy indemnifying defendants would not cover their liability were the corporation itself to bring suit against them is also not a sufficiently particular basis for inferring demand futility. *See Caruana v. Saligman,* Civ. A. No. 11135, 1990 WL 212304, at *4 (Del.Ch. Dec.21, 1990) (citing *Decker v. Clausen,* Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del.Ch. Nov.6, 1989)).

After considering the Amended Complaint's allegations *in toto,* the Court has determined that the Amended Complaint must be dismissed, because it fails to allege with particularity the futility of making a demand on the JPM Chase Board of Directors.

## III. CONCLUSION

Defendants' motion to dismiss the Amended Complaint is granted on the grounds that plaintiff has failed to comply with the particularity requirement of Fed. R.Civ.P. 23.1. Plaintiff's request for leave to re-plead in the event of dismissal is granted, and if plaintiff intends to submit a second amended complaint, it shall do so within 20 days of this Opinion & Order.